## ST. LOUIS & S. F. R. CO. et al. v. MANN.

No. 9775—Opinion Filed Sept. 7, 1920.

(Syllabus by the Court.)

1. **Eminent Domain — Appropriation of Land—Acquiescence of Owner—Remedies—Action for Damages.**

Where a public service corporation, vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by and permits such corporation to go on and spend large sums of money in constructing its railroad, or telegraph wires, or pipe lines, or mains. or plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment. and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land, on the theory that the public has acquired an interest in the appropriation. Under such circumstances an appropriation will be treated as equivalent to title by condemnation.

2. **Eminent Domain—Extent of Power of Acquisition by Public Service Corporation.**

A public service corporation's delegated power of eminent domain is not unlimited, and cannot be used for the purpose of acquiring property other than whatever is reasonably necessary for its corporate purposes.

3. **Estoppel — Essentials — Knowledge of Facts.**

An estoppel cannot be set up against a party ignorant of the true state of affairs, or whose conduct was based on pure mistake.

4. **Same—Estoppel by Conduct—Intent.**

To establish estoppel by conduct it is necessary that the conduct relied upon should have been intended to influence the other party to act, and if there was no such intent, the estoppel is not made out.

5. **Eminent Domain—Self-Appropriation by Public Service Corporation—Estoppel of Landowner.**

The doctrine of estoppel based on self-appropriation by a public service corporation is no greater than its power of eminent domain; and what a public service corporation cannot condemn, it cannot acquire by self-appropriation, without the consent of the owner.

Error from District Court, Pawnee County; Conn Linn, Judge.

Action by T. E. Mann against the St. Louis & San Francisco Railroad Company and others, its receivers, for usable value of real estate. Judgment for plaintiff, and defendants bring error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and Fred E Suits, for plaintiffs in error

Edwin R. McNeill, for defendant in error.

RAMSEY, J. T. E. Mann, defendant in error, as plaintiff below, commenced this action against plaintiff in error, defendant below, to recover the usable value of a strip of land approximately 60 feet wide by 250 feet long. The strip is part of the land allotted to the plaintiff as a citizen of the Creek Nation. The plaintiff's allotment deed was executed March 30, 1903, and approved by the Secretary of the Interior January 21, 1904, and recorded February 1, 1904. The evidence shows that the strip borders on the defendant's right of way, and that one of the defendant's section houses, situated on the right of way extends over on the plaintiff's land about 11 inches, also that the defendant has under fence about 25 additional feet of plaintiff's land and has rendered a strip of about 25 or 30 feet of plaintiff's land on the outside of its fence unusable for agricultural purposes. Just when the defendant took possession of said strip is not shown but it has been in possession since sometime in 1903. But how long before that if at all is not disclosed by the record. Plaintiff sought to recover $50 a year for fourteen years. The jury returned a verdict in favor of plaintiff for $350. It does not appear that plaintiff objected to the railroad occupying the land and in fact he testified that the railroad had a board fence around there and that he prevailed upon the railroad to put a wire fence in lieu of the board fence. There is no evidence that plaintiff at that time knew the boundary line or that defendant was using his land. Just when he learned that is not shown. On this strip, in addition to the 11 inches covered by the section house, the railroad built some outhouses, constructed a cistern, and in all respects treated the strip as belonging to it.

The defendant invokes the proposition that where a public service corporation endowed with the power of eminent domain enters upon another's land and appropriates it to its own use with or without the express consent of the owner and proceeds to build and construct its railroad, telegraph line, or other essential plant, appliance, etc., the owner cannot maintain ejectment, but must sue for the value of the land, on the theory that suit for the value is practically a condemnation action. In other words, that either party may institute condemnation proceedings. Where a public service corporation (prior to statehood), vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by and permits a railroad or public service corporation to go on and spend large sums of money in constructing its roads, telegraph or telephone lines, pipe lines, plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment, and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land, on the theory that the appropriation by the public service corporation under such circumstances is equivalent to title by condemnation. Roberts v. Northern Pacific R. R. Co., 158 U. S. 1, 39 L. Ed. 873; Gurnsey v. Northern California Power Co. (Cal.) 117 Pac. 906; Jones on Telegraphs and Telephones, sec. 53; Indiana B. & W. Ry. Co. v. Allen, 113 Ind. 581, 15 N. E. 446; Goodin v. Cincinnati & W. Canal Co., 18 Ohio St. 169, 98 Am. Dec. 95; Chicago & A. R. Co. v. Goodwin, 111 Ill. 202, 53 Am. Rep. 622; Northern Pac. R. R. Co. v. Smith, 171 U. S. 261, 43 L. Ed. 157; Kindred v. Union Pacific R. Co., 225 U. S. 582; Penn Mutual Life Ins. Co. v. City of Austin, 168 U. S. 685, 42 L. Ed. 626; United States v. Great Falls Mfg. Co., 112 U. S. 645, 28 L. Ed. 846; Boise Valley Const. Co. v. Kroeger (Idaho) 105 Pac. 1070; Buckwalter v. A. T. & S. F. R. Co., 64 Kan. 403, 67 Pac. 831; Northern Pac. R. Co. v. Murray, 87 Fed. 648. This principle is recognized in Muskogee Electric Traction Co. v. Madden, 55 Okla. 322, 155 Pac. 540, and Blackwell, etc., R. Co. v. Bebout, 19 Okla. 63, 91 Pac. 877.

It does not appear either from the pleadings or the evidence exactly when the defendant took possession of its right of way. However, the construction of the section house over its right of way, extending about 11 inches over on plaintiff's land, warrants the conclusion that defendant acquired its right of way prior to its appropriation of plaintiff's land. It nowhere appears from the pleadings or the evidence that the strip of land in question was necessary for the defendant's purposes. There is no evidence on that point. To authorize the condemnation of land under a power delegated by the state, it must appear that the land is necessary for the defendant's purposes; that is, necessary to enable it to carry on its corporate business as a public service corporation. The extent to which property may be taken for public use rests wholly in the discretion of the Legislature, and the Legislature may determine the amount necessary and also its location. 15 Cyc. 632.

The rights of the parties must be determined as of the time the railroad appropriated the land in question and made the improvements. Roberts v. Northern Pacific R. R. Co., 158 U. S. 1, 39 L. Ed. 873. If the railroad company took possession and made the improvements prior to the allotment of the land and while the title was in the Creek Nation, it was necessary to plead and prove some legal authority. Entry and construction of a fence and section house would not operate to estop the Creek Nation or the federal government. See section 2118, R. L. of U. S. (section 3529, Barnes' Fed. Code 1919). It is well settled that corporations have only such powers as are expressly granted and such implied incidental powers as are necessary to enable them to enjoy their express powers. All other powers are prohibited.

The railroad company had neither express nor implied powers to appropriate lands of the Creek Nation in addition to those required for its right of way and station grounds. The implied power of a corporation to acquire and hold real property is limited by the purposes of the corporation. And while real property need not be necessary in the sense of indispensable, it must be reasonably necessary. Fletcher's Cyclopedia of Corporations, vol. 2, sec. 1086. And suppose the land had been allotted to the plaintiff at the time the railroad appropriated it: It would be necessary to show that the plaintiff had knowledge of the appropriation and with full knowledge acquiesced in the expenditure of money in making the improvements thereon. 4th Am. & Eng. Dec. in Equity, p. 269; Bigelow on Estoppel (6th Ed.) p. 672. It is well settled that an estoppel cannot be set up against a party ignorant of the true state of affairs, or whose conduct was based upon pure mistake. To establish estoppel by conduct it is necessary that the conduct relied upon should have been intended to influence the other party to act, and if there was no

such intent, the estoppel is not made out. 4th Am. & Eng. Dec. in Equity, pp. 271-276; Bigelow on Estoppel (6th Ed.) p. 684. That is still not enough. It must be shown that the improvements and the lands appropriated were necessary to enable the company to enjoy its express power and discharge its duties to the public. Has the public any interest in the little strip of land the defendant appropriated in this case? We think not. The railroad company is a trespasser upon the lands of another when it enters without warrant or authority, but where a public service corporation may acquire certain property by exercising its power of eminent domain, and enters into possession without exercising the power and by appropriation and improvements makes the property a component part of its railroad or system to the extent that the surrender of possession would interfere seriously with the interest of the company, and the public, the landowner is confined to a suit for the value of the land, if it appears that he stood by and witnessed the appropriation and expenditure of money in making his property a component part of the company's system. The power of eminent domain is not unlimited. It cannot be used for the purpose of acquiring property other than whatever is necessary, and there is no evidence in this record showing any necessity. The doctrine of estoppel based on self-appropriation is no greater than the power of eminent domain, and what it cannot condemn, it cannot acquire by self-appropriation without the consent, express or implied, of the landowner.

This question is pretty thoroughly discussed in Charleston and Western Carolina Railway Company v. Hughes, 105 Ga. 1, 70 Am. St. Rep. 1, wherein the court said:

"When a railroad company, without warrant or authority, enters upon the land of another, it is, as a general rule, no less a trespasser than any other person who is guilty of an act of a similar nature. If, however, a railroad company enters upon the land with the **consent of the owner, or under license from him,** and the property thus taken possession of becomes such a necessary component part of its railroad that to surrender its possession would interfere seriously with the interests of the company, the landowner, although entitled to compensation for his property might, by his conduct in allowing the entry upon his land and permitting the company to so use it as that it could not be abandoned without great prejudice to its rights, estop himself from asserting against the company the legal title to the property by an action of ejectment. The propositions above stated are simply the application of familiar principles of law which

govern in all transactions of the character above referred to, whether the controversy be between natural persons alone, or between such persons and corporations, and whether the corporation be public or private. A railroad corporation, being one charged by the law with the performance of certain duties to the public, is allowed, **under some circumstances, to set up rights connected with the land over which it operates its line of railway, of which an individual or an ordinary private corporation would not generally be allowed to avail itself.** Controversies in reference to the possession of land, where the rights of individuals only are involved, are purely matters of private concern. Controversies in which a corporation charged with the duties incumbent upon carriers of passengers, freight, and mails, in which an effort is made by private individuals or others to take away from such corporation a part of the property in its possession which is absolutely essential to its complete performance of the public duties required of it, become matters of more than private concern, and in which the public is deeply and seriously interested. For this reason it has become settled law that the harsh remedies which would be allowed to one individual against another in reference to the possession of land will not be allowed to one who is seeking to recover such property from a railroad company, when exact justice can be done to such owner by giving him remedies which are less severe in their nature, and by which he would secure substantially the same rights, thereby saving to the public the right to require a performance of the public duties incumbent upon the corporation whose property is the subject-matter of the controversy. That a railroad corporation has a right to deprive a person of his property for its uses by doing acts which in an individual would be dealt with as a trespass is not contended for; but when a railroad company enters upon land and constructs its road without lawful authority, and the landowner acquiesces in the wrongful act and the consequent appropriation of the property to a great public use until the same has become a necessary component part of the property required by the railroad to perform its public duties, such landowner will be held to have waived his right to retake the property, and will be remitted to such other remedies for the wrong done him as will not interfere with the rights of the public to have the railroad maintained and operated. If this is the case in reference to unlawful entry, for a stronger reason the same result would follow if the entry by the railroad company in the first instance was by the authority or consent of the landowner, even though it be under a parol license and the legal title to the land still remain in the landowner. The current of modern authority sustains the proposition that when a railroad company is in possession of land, using it as a right of way, although not having acquired the legal title thereto, the landowner would be estopped

from ejecting the company from the premises if it was shown either that the original entry was with his consent, or that the entry without his consent was so long acquiesced in that to allow the company to be ejected would either dismember the property of the company, or essentially interfere with its ability to discharge the public duties incumbent upon it. This, however, is subject to the qualification that the landowner is entitled to compensation for his property, and this must be ascertained and paid to him before the corporation is vested with a complete right to hold and enjoy his property as its own.

"In the case of Indiana, etc., R. Co. v. Allen, 113 Ind. 581, the general rule is stated to be, that when land is seized by a railroad company without right the owner may maintain ejectment; but where there has been an acquiescence on the part of the owner until public rights have intervened, such action will not lie, but the landowner will be confined to a recovery of compensation. In Louisville, etc., R. Co. v. Beck, 119 Ind. 124, it was held that: 'A landowner who stands by without demanding compensation, until a railroad company has so far completed and put in operation its road over his land as to involve the public interest, can neither enjoin the company nor maintain ejectment to recover his land. The only remedy left to the landowner, in such a case, is to proceed within the proper time to have his damages assessed and enforced against the railroad company.' In the case of Galveston, etc., R. R. Co. v. Pfeuffer, 56 Tex. 66, it was held that where land was appropriated by a railroad company without authority, the right of the owner to compensation was not waived by his standing by and permitting the company to construct its road over his land, nor was his right to recover the land lost if the company refused to make compensation. In the case of McAulay v. Western, etc., R. R. Co., 33 Vt. 311, 78 Am. Dec. 627, it was held, where a landowner acquiesced in the occupation of his land for the construction of a railroad, without requiring prepayment of damages, upon a contract for future payment by the company, and the road was constructed and put in operation, that he could not afterward, on failure to obtain payment, maintain ejectment or trespass for the land. See, also, Roberts v. Northern Pac. R. R. Co., 158 U. S. 1; 3 Elliott on Railroads, sec. 1049. In those cases where it has been held that the landowner would be entitled to bring suit against the company in ejectment, and where a judgment in ejectment was allowed to be rendered, it was also held that upon appropriate pleadings the issuing of a writ of possession would be stayed until the company could be allowed a reasonable time in which to acquire title to the property, either by purchase or condemnation, or that the enforcement of such a judgment in ejection would be enjoined for a similar reason. Pittsburg, etc., R. R. Co. v. Bruce. 102 Pa. St. 23; Pittsburg, etc., R. R. Co. v. Jones, 59 Pa. St.

433; Conger v. Burlington, etc., R. Co., 41 Iowa, 419; Jacksonville, etc., R. Co. v. Adams, 33 Fla. 608. In the case of Young v. McKenzie, 3 Ga. 31, it was held that an action of ejectment against a bridge company to recover property in its possession, and necessary for the purpose of building the bridge, but to which the title had not been acquired either by purchase or condemnation, should be enjoined until the bridge company should have a reasonable time to comply with the terms of its charter in reference to condemning the property for its use. In this case there had been an attempt to acquire the land by condemnation, which failed for the reason that the proceedings before the appraisers were recorded in the wrong place. Under color of this authority the land was entered upon and the bridge built, and this was one of the reasons which brought the court to the conclusion that in equity the company should not be ejected until an opportunity had been afforded it to acquire the land by condemnation." (Emphasis ours.)

It is contended that the verdict is excessive. The defendant did not plead the limitations provided in section 2873, Rev. Laws 1910. Campbell v. Dick, 71 Oklahoma, 176 Pac. 520; Sedgwick on Damages (9th Ed.) vol. 3, sec. 914. There is some evidence reasonably tending to support the verdict, and the judgment is affirmed.

All the Justices concur, except McNEILL, J., not participating.