## FIPPS v. STIDHAM.

No. 23715. Sept. 25, 1935.

Rehearing Denied Nov. 5, 1935.

474

I. H. Lookabaugh, for plaintiff in error.

Tom L. Ruble, for defendant in error.

PER CURIAM. On September 22, 1931, this action in replevin was brought in the county court of Dewey county by Dennis Stidham, the defendant in error, against W. R. Fipps, the plaintiff in error, and John F. Haffner for the possession of personal property given as security for the payment of a promissory note in the sum of $604.20 and for damages. The parties will be hereinafter referred to as they were designated in the trial court. Th defendant John F. Haffner did not appeal and is not a necessary party to the appeal.

In due time the defendant Fipps filed his verified answer generally and specifically denying indebtedness to the plaintiff on August 4, 1931, the date of the note and mortgage, and at any other time, and to the bank of which plaintiff was then the vice

president, and that plaintiff was an innocent purchaser of the alleged note and mortgage; alleging that plaintiff well knew all of the facts and circumstances concerning the transaction out of which it is claimed said matters arose; pleading failure of consideration and praying for damages in the sum of $1,000 for wrongful bringing of the action. To which answer plaintiff filed his reply denying generally and specifically the allegations in defendant's answer and specially pleading that the defendant is estopped to urge the note and the mortgage were given without consideration, for the reason that the note was the last of a series of notes given to the Dewey County State Bank covering the same security and was given in payment of a former note upon the same indebtedness and for the same consideration.

On trial of the cause to the court, after the introduction of plaintiff's testimony to establish his note and mortgage and his right to prevail, the evidence on the part of the defense discloses that, on or about August 27, 1927, the defendant Fipps purchased a tract of land through the Dewey County State Bank and its officials, N. Stidham and Gordon Stidham, for a consideration of $8,000, assuming as a part of said consideration a $3,000 mortgage to the School Land Commission and a second mortgage in the sum of $500 payable to Mae Wanzer, and giving in payment of the balance notes as follows: To the First National Bank in Taloga the sums of $900 and $1,500 and to Gordon Stidham the sums of $1,050, $600, and $450, in all five notes totaling the sum of $4,500.

On or about March 1, 1930, said defendant through the Dewey County State Bank and its said officers sold the same tract of land for the sum of $8,000, taking as part payment therefor chattels at an agreed price of $1,200 and a farm valued in the trade at the sum of $3,500, the Dewey County State Bank and its said officials retaining the balance of the purchase price in the sum of $3,300.

Further evidence on behalf of the defendant discloses that all of the records, canceled vouchers, and instruments concerning these two transactions were retained and kept by the said bank and its officials; that the plaintiff, for a considerable portion of the time between the two transactions and afterwards, was an active officer of the bank and in position to know all about these transactions, and with Gordon Stidham and N. Stidham interested himself in the same, and

more particularly with the defendant; that the defendant, a man lacking in education, was unable to read, write, and compute well enough to ascertain for himself as to just how matters stood in the two transactions, had confidence and faith in the Stidhams and their Dewey County State Bank, and relying on them and the bank and their integrity paid out to and through the bank and the Stidhams the total sum of $9,247.53 on obligations which could not have exceeded the sum of $9,295.93, including interest. Of these sums the original debits due Gordon Stidham, and later partially involved in the assets of the bank, totaled the sum of $2,289, and including the school land loan of $3,000 and its increase of $500, which was to be paid off by and through the bank and the Stidhams for the defendant, was the sum of $5,789, for which total obligation of the defendant the State Bank and Stidhams received payments and cash in the total sum of $6,880.74; that after the purchase and the sale and before the last payments of the defendant in the total sum of $336.70, the Dewey County State Bank obtained the signature of the defendant to a note in the sum of $850, which was later renewed for the sum of $750, and again renewed by another note in the sum of $604.20. This last note was purchased from the State Bank by the plaintiff, Dennis Stidham, because as he expressed it the bank examiners criticised the loan, and was renewed by the defendant by executing a new note and mortgage in a like amount, and which note and mortgage are in issue in the suit. That these two transactions, the purchase and the sale, constitute the only borrowings of the defendant from the State Bank or any of its officers.

That the plaintiff was in and around the bank when the defendant was there on the business of the two deals, and talked to the defendant and others both in and out of the bank about matters growing out of these two deals; that the papers, vouchers, data, and documents concerning these two deals were held where Gordon Stidham said it would be safer than with the defendant, and it was after the Stidhams were no longer connected with the bank and after the bringing of this suit that the defendant received his canceled notes, checks, and papers in these matters from the bank and was enabled to have the debits and credits computed. Prior to this investigation the defendant believed that he was justly indebted to the Dewey County State Bank.

The plaintiff denied that he was familiar with the transactions the defendant had with his bank and the other two Stidhams, admitted being vice president of the bank for about two years of the time involved in this controversy, and as such made one collection for the bank from the defendant, and admits that on August 4, 1931, he valued the International farm tractor involved in the chattel mortgage at $400, which chattel, through the bank and its officials, had been negotiated to the defendant at a trade value of $1,200 in one of the deals less than a year and a half before. This testimony was not in rebuttal to the testimony introduced by the defendant.

The demurrer of the plaintiff to the defendant's evidence was sustained, and judgment entered for the plaintiff.

The defendant W. R. Fipps brings this appeal.

■ The contention of the plaintiff that the trial court found for the plaintiff on the evidence and not on the plaintiff's demurrer to the defendant's evidence is not borne out by the record. The ruling of the court was not afterward disturbed, nor did the plaintiff request that it be set aside. It therefore stands as having been sustained.

It is a settled rule in this jurisdiction that a demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences and conclusions that may be reasonably and logically drawn from the evidence. Wm. Cameron & Co. v. Henderson, 40 Okla. 648, 140 P. 404; Crow v. Crow, 40 Okla. 455, 139 P. 122.

And upon a demurrer to the evidence demurree is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove. Anthony v. Bliss, 39 Okla. 237, 134 P. 1122.

On demurrer to the evidence, conflicting evidence cannot be weighed. Moss v. Hunt, 40 Okla. 20, 135 P. 282.

Without drawing inferences and conclusions from the defendant's evidence more favorable to the defendant than to the plaintiff, we note that the total possible charges, including interest, against the defendant on the two transactions of the defendant with the Dewey County State Bank and the Stidhams does not exceed the sum of $9,295.93, and the total credit payments made by or for the defendant thereon is the sum of $9,247.53, a difference against the defendant of

the sum of $48.40, and that of these respective sums the total charges clearly against the defendant to and through the State Bank and the Stidhams is the sum of $5,789, with the credits and payments due to and made by the defendant to the State Bank and the Stidhams reaching the sum of $6,880.74, or a difference in the sum of $1,091.74 in the defendant's favor. Of the credits to which the defendant is entitled, only the sums of $175 and $4 admittedly went to the State Bank by payments through the plaintiff.

If under the evidence of the defendant the plaintiff may be properly charged with sufficient knowledge or participation and the judgment for the defendant would not be contra to other rules of law in this jurisdiction, the judgment should be for the defendant.

■ On the part of the defendant Fipps, it is contended that there was an existing confidential relation between the Dewey County State Bank, including its officers and the plaintiff Stidham, and himself in which he was misled and overreached.

A confidential relation exists between parties to a transaction wherein one of the parties is in duty bound to act in the utmost good faith for the benefit of the other party, and includes legal and all other relationships where confidence is rightfully reposed. Wilson v. Rentie 124 Okla. 37, 254 P. 64; Ewing v. Ewing, 33 Okla. 414, 126 P. 811.

Confidential and fiduciary relations are in law synonymous, and exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another, In re Cover's Estate, 188 Cal. 133, 204 P. 583, 588.

"The term, fiduciary or confidential relation, as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, Does such a relation in fact exist?" 2 Pom., Eq. Jur. sec. 947.

From the defendant's evidence we conclude and are of the opinion that as between the defendant Fipps on one side and the Dewey County State Bank and the Stidhams, including the plaintiff Dennis Stidham, on the other, a confidential relation existed. The plaintiff, for a time an active official in the bank, and shown to have been active to some extent in the dealings between the bank and Fipps, cannot, on the plea of ignorance of the facts, be allowed to confirm the profit as against Fipps. Under the trial demurrer the evidence on the part of the defense is admitted to be true. To hold otherwise would require us to draw illogical inferences and conclusions from the evidence, and in the absence of positive rule to the contrary the defendant should have prevailed.

■ In a long line of decisions this court has steadfastly ruled that where one gives a note in renewal of another note, with knowledge at the time of the fraud, then such renewal operates as a waiver of the right to urge the same as a defense against the renewal. Haffner v. First Nat. Bank of Seiling, 152 Okla. 169, 5 P. (2d) 351. And where on giving such renewal note the maker either had knowledge of such facts and circumstances or by the exercise of ordinary diligence could have discovered them, and ascertained his rights, it becomes his duty to make such inquiry and investigation before executing the renewal, and if he fails so to do, he is as much bound as if he had actual knowledge thereof. Security Nat. Bank of Tulsa v. Bohnefeld, 131 Okla. 66, 267 P. 631; Tudor v. American Inv. Co. of Enid, 163 Okla. 274, 21 P. (2d) 1056; Allen v. Oklahoma State Bank, 133 Okla. 14, 270 P. 838.

Unless the relationship between the defendant Fipps and the Dewey County State Bank and the Stidhams was such that his conduct did not amount to the lack of the exercise of ordinary diligence under the circumstances, and unless the plaintiff, Stidham, occupied a position that would bring him within the rules governing such relationship or he had actual knowledge of the fraud, the plea of failure of consideration would not be available to the defendant.

Whether or not there has been the exercise of ordinary diligence is always a question of fact to be determined from the evidence adduced in each particular case, and we so hold.

From the facts and circumstances brought out in the defendant's evidence, it appears that he did use and exercise ordinary diligence, such as a reasonable person of his ability would exercise. The bank, in addition to its usual services, was acting as an agent for its principal, Fipps. The bank and its officials treated the enterprises and deals

with Fipps interchangeably with the business of the bank and the Stidhams. Fipps, by reason of his faith and confidence in the State Bank and the Stidhams, had a right to expect fair dealing on their part, and it was the duty of these fiduciaries and confidants to keep him informed and not to overreach the confidence of the defendant.

The defendant had very little education, and the fact that he was unable to compute without assistance was not disputed and must have been known by all of the officials of the bank coming in contact with him. One cannot read his testimony and fail to arrive at the conclusion that he is slow of comprehension. He was lulled into a sense of security from which he did not awaken until the bank had returned to him the data on these transactions, and it was not until after this suit was commenced and after the Stidhams all had severed connection with the bank.

■ To the plea of failure of consideration on the part of the defendant there was interposed a plea of estoppel by the plaintiff. This plea of the plaintiff imputes to the defendant active misconduct, and no stretch of the imagination can charge that he was more than passive or inactive.

The essential elements of an "equitable estoppel" are: First, there must be a false representation or concealment of facts; second, it must have been made with knowledge, actual or constructive, of the real facts; third, the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; fourth, it must have been made with the intention that it should be acted upon; fifth, the party to whom it was made must have relied upon it to his prejudice. The representation of concealment mentioned may arise from silence of a party under imperative duty to speak; and the intention that the representation or concealment be acted upon may be inferred from the circumstances. Texas Co. v. Pettit, 107 Okla. 243, 220 P. 956, 231 P. 463.

Was the plaintiff, Stidham, without knowledge or the means of knowledge of the real facts? We think not. Neither did the plaintiff act upon the silence of the defendant to plaintiff's prejudice. Rather the plaintiff knew or was in position to know of the real facts and kept his silence, thereby opening up to the defendant a plea in the nature of an estoppel.

The party who pleads an estoppel must be one who has, in good faith, been misled to his injury. Williams v. Purcell, 45 Okla. 489, 145 P. 1151; Coats v. Riley, 154 Okla. 291, 7 P. (2d) 644; and Hynds v. Bank of Stonewall, 115 Okla. 275, 242 P. 861.

Estoppel cannot be set up against a party ignorant of the true state of affairs. St. Louis & S. F. R. Co. v. Mann, 79 Okla. 160, 192 P. 231, and Flesner v. Cooper, 62 Okla 263, 162 P. 1112.

Estoppel may not be used as an instrument of fraud, but only to prevent injustice. Slyman v. Alexander, 126 Okla. 232, 259 P. 224.

"Estoppel" is the inhibition to assert a right which the law places on one as a consequence of his conduct which has resulted in injury or detriment to another, while "waiver" is a voluntary surrender. Northwestern Nat. Life Ins. Co. v. Ward, 56 Okla. 188, 155 P. 524.

A "waiver" is the voluntary or intentional relinquishment of a known right, which involves the notion of an intention entertained by the holder of some right to abandon or relinquish instead of insisting on the right. Ketchum v. Oil Field Sup. Co., 99 Okla. 201, 226 P. 93.

Prior to the institution of this suit, the defendant Fipps did not know and was not in position to know that he had any right to waive.

For the foregoing reasons and rules of law, we are of the opinion that the trial court erred in sustaining the demurrer of the plaintiff, Dennis Stidham, to the evidence of the defendant W. R. Fipps, and therefore the judgment of the trial court is reversed and remanded, with instructions to proceed in accordance with this opinion.

The Supreme Court acknowledges the aid of Attorneys Ferd P. Snider and R. M. Mountcastle in the preparation of this opinion These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Snider and approved by Mr. Mountcastle, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.