**Bennie W. AGEE, Administrator of the Estate of M. Louise Agee, Deceased, Appellant,**

**v.**

**The TRAVELERS INDEMNITY COMPANY, Appellee.**

**No. 9441.**

United States Court of Appeals
Tenth Circuit.

May 29, 1968.

Carl E. Moslander, Oklahoma City, Okl., for appellant.

Glenn H. Grubb, Oklahoma City, Okl. (David R. Dickey and Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Okl., of counsel, on the brief), for appellee.

Before MARVIN JONES,* Judge, Court of Claims, and LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The action in the district court was in the nature of garnishment to require appellee-defendant, The Travelers Indemnity Company, to pay a judgment for $21,632 obtained in Oklahoma state court against Chester Lee Sullivan for negligence which resulted in the death of M. Louise Agee. Appellant-plaintiff Bennie Agee is the administrator of the estate of Louise Agee. The district court denied recovery and this appeal followed.

Bennie and Louise were husband and wife until a final decree of divorce was entered a few days before her death. On July 3, 1963, Travelers issued a family automobile policy to B. W. Agee, the same person as Bennie W. Agee, covering a 1963 Chevrolet and a 1956 Buick. Bennie and Louise separated on June 21, 1964, with Bennie moving out of the family home and taking the children with him. On the basis of a renewal statement signed by Bennie, Travelers issued a renewal policy which was mailed to Bennie on May 5, 1964, and which was to become effective on July 3, 1964. No changes were made in the policy.

Divorce proceedings were begun on July 6, 1964. A divorce decree was entered on August 14, 1964. The decree awarded the 1956 Buick to Louise. On August 15, 1964, Louise traded the Buick for a 1964 Oldsmobile. On August 17 she returned the Oldsmobile to the garage from which she had purchased it for repairs. She did not have another car to drive, and the garage loaned her a 1959 Chevrolet. On August 19, Louise was a passenger in the 1959 Chevrolet which was being driven by Sullivan with her consent. An accident occurred and Louise was killed.

Bennie as administrator sued Sullivan and others for the death of Louise. Sullivan requested Travelers to defend on the ground that he was covered by the July 3 renewal policy of Travelers. Travelers refused to defend. Bennie obtained a judgment against Sullivan which was not satisfied. Bennie then brought the instant garnishment action against Travelers in federal district court.

█ If Louise was a named insured in the policy, Sullivan was covered because the 1959 Chevrolet would come within the definition of "owned automobile" and because Sullivan was driving with the permission of Louise. The policy defines "named insured" to mean "any individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household." Item 1 of the declarations reads that the named insured is B. W. Agee. At the end of the line provided for Item 2, which states the

policy period, are two asterisks. Near the lower right-hand corner of the declarations page is a box. At the top of the box, in the same print as the policy form appears, " ** 12:01 A.M., standard time at the address of the named insured as stated herein." Typed in below that are the names B. W. Agee and M. Louise. Each name is followed by numbers, which under the undisputed testimony show the birth date of each and the number of the Oklahoma driver's license held by each. Below this is the name of the insurance agency. The claim is that the inclusion of the name of Louise in the box makes her a named insured.

A witness for Travelers testified that the typed information in the box was for underwriting purposes. The dates disclosed the ages of those regularly driving the automobiles and the license numbers furnished the means for checking traffic violations. He explained that the printed phrase following the two asterisks was to call attention to the fact that the period of policy coverage was determined by standard time prevailing at the address of the named insured.

Bennie argues that the inclusion of the name of Louise in the box creates a patent ambiguity which must be resolved against the insurer because it wrote the policy. We do not agree. The asterisks refer to Item 2—not to Item 1 which clearly gives the name of the person insured. Nothing in the policy indicates any intent to expand the "named insured" by the inclusion of any names in the box. Although no explanation for the appearance of the name of Louise in the box appears in the policy, the lack of explanation does not create an ambiguity. So far as the insuring contract is concerned, the inclusion of the names in the box is surplusage and does not extend the coverage.

■ Counsel say that Bennie asked for and received a family policy to cover both himself and his wife and both cars. The 1956 Buick was paid for from a joint

bank account to which Louise had not contributed for several years. It was licensed in the name of Louise. The 1963 Chevrolet was licensed in the name of Bennie. Travelers concedes that as long as Louise was the spouse of Bennie and lived in his household she was a named insured. When Bennie moved out of the family home with the children and established another household, she was no longer a named insured but was covered because she was driving an "owned automobile" within the policy terms with the consent of Bennie. This situation changed with the divorce decree which awarded the Buick to Louise. Bennie was no longer in a situation to grant permission for the use of the Buick and did not grant any permission to Sullivan.

■■ Bennie seeks a judicial reformation of the policy to include Louise as a named insured. In Oklahoma there can be no reformation of a contract unless there is an antecedent agreement by which to make the rectification and the evidence must be sufficient to take the question out of the range of reasonable controversy because the court cannot make a new or different contract for the parties.[1] Bennie wanted and received coverage for himself and his wife and for the two cars. When the policy came up for renewal he requested no change. The only possibility of mistake arises after the separation. Bennie testified, and the insurance agent admitted, that after the separation he called the agent and told him of the separation and of his move to another home. He did not request a policy change and the agent made none because the coverage continued. The situation changed after the divorce. Bennie testified that in a second telephone conversation with the agent he reported that he and Louise were getting a divorce and he wanted the coverage on the Buick continued. The agent testified that after the conversation relating to the separation, he had no other conversation with Bennie until after the acci-

1. See Dennis v. American-First Title & Trust Company, Okl., 405 P.2d 993, 997, and Douglas v. Douglas, 176 Okl. 378, 56 P.2d 362, 369.

dent. The trial judge stated specifically that he adopted the testimony of the agent and found that the agent had no notice either of the divorce or of the trade of the Buick for the Oldsmobile until after the accident. In the circumstances there was no antecedent agreement on which reformation can be based. We are not concerned with what the responsibilities of Travelers might have been if the agent had known of the divorce.

In May, 1965, Travelers made a $500 medical payment under the policy to Bennie as administrator of the estate of Louise. Bennie argues that because of this payment Travelers is estopped to deny coverage. Before the payment Travelers had investigated the accident and denied liability. The agent who made the payment testified that he did so mistakenly and without reviewing the file. The district court found that the payment was made "in error and by mistake."

Counsel for Bennie rely on Security Ins. Co. of New Haven v. White, 10 Cir., 236 F.2d 215, and Cochran v. Order of United Commercial Travelers, 10 Cir., 143 F.2d 82. The cases are not in point. Neither relates to a mistake and in each there was detrimental reliance by the insured on the conduct of the insurer.

The elements of equitable estoppel under Oklahoma law are set out in Antrim Lumber Co. v. Wagner, 175 Okl. 564, 54 P.2d 173, 176. They include knowledge and detrimental reliance. In St. Louis & S.F.R. Co. v. Mann, 79 Okl. 160, 192 P. 231, 233, it was said that estoppel cannot be set up against a party "whose conduct was based upon pure mistake." Here the record shows, and the court found, that the medical payment was made by mistake. The evidence shows no reliance by Bennie on the payment which might have been a detriment to him. The district court correctly found no detrimental reliance and correctly concluded that under Oklahoma law no estoppel arose.[2]

Affirmed.

MARVIN JONES, Senior Judge (dissenting):

I regret that I am unable to agree with the majority opinion. Under my view of the case, Louise Agee should be considered a named insured both because the policy is ambiguous and because even if it were unambiguous, appellant would be entitled to reformation so as to include her as named insured.

The ambiguity in the policy results from the inclusion of Louise's name in a large box in the lower right-hand corner of the declarations page along with the name of Bennie Agee. The box contained a small printed phrase, " *** 12:01 A.M., standard time at the address of the named insured as stated herein." Stamped in the box in large letters immediately under the printed phrase is the name of B. W. Agee, and right under his name is that of M. Louise. These names are set out in bold relief in the renewal policy. Anyone reading it could reasonably interpret the words "named insured as stated herein" to refer to the names in the box as well as to Item I, which listed only B. W. Agee as the named insured. This is especially so because no other reason for the inclusion of Louise's name appears on the face of the declarations page. It is true, as the majority opinion points out, that the insurance company had its own undisclosed purposes in putting her name in the box, but these purposes could not be discovered by appellant upon an examination of the policy. In my judgment the box containing the names of Bennie and Louise is somewhat similar to a mortgage clause written in a deed which completely changes the nature of the instrument. The effect of the inclusion of the names in the box was, at the least, to create an ambiguity in the policy with regard to whether Louise was a named insured.

2. See Continental Oil Company v. Rapp, Okl., 301 P.2d 198, 203, and Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680, 684.

It has long been held that ambiguities in insurance policies should be resolved against the insurer. E. g., Mutual Life Insurance Company v. Hurni Packing Company, 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235 (1923). The ambiguous policy before us should be interpreted so as to make Louise Agee a named insured.

Even if the policy unambiguously stated that appellant was the only named insured, however, I would still reverse, because I believe the evidence shows that appellant is entitled to a reformation of the policy so as to include Louise as a named insured. Appellant testified that he advised appellee's representative Whitehurst before the renewal policy was issued that he and his wife had separated; that he had left the home and lived elsewhere and that she remained in the home, and that a divorce was contemplated.

The trial judge stated that he adopted Whitehurst's testimony and found that "B. W. Agee requested no changes in the insurance policy and that there was thus no antecedent agreement between B. W. Agee and the insurance agent or any other basis on which to reform or otherwise extend the coverage beyond the terms of the policy as placed in evidence."

In making this finding, the trial court evidently overlooked the testimony of Whitehurst that, in a conversation prior to the renewal of the policy, appellant had "probably" informed him of the impending divorce. I quote from the Transcript of Record, p. 82:

Q. Now if I understand you correctly, you did acknowledge Mr. Agee had a conversation with you in which, before the issuance of this renewal policy, in which you were informed that he was separated from his wife? A. Yes.

Q. Did that conversation also advise you that a divorce was also contemplated between the parties? A. Probably so. Sometime in the future, but at that time, there was no indication of any date or time involved.

The foregoing testimony of Whitehurst was an admission against interest which, when coupled with appellant's testimony that he had informed Whitehurst of the divorce, convinces me that the trial judge was in error in finding no basis on which to reform the contract.

When all the testimony is considered and the underbrush is cleared away some naked facts stand out in stark relief. Whitehurst, the authorized agent of Travelers, sold a policy in 1963 to B. W. Agee covering two automobiles, one owned by Agee and one by his wife, the title to which was in her name. Pursuant to Whitehurst's usual custom, only the husband's name was used, but both parties and both cars were covered in that policy. The Agees lived together until June 1, 1964, when they were separated. The wife stayed at the same residence, the husband moved to another address.

A renewal policy was issued on July 3, 1964, covering both cars. Before the renewal policy was issued, the agent was informed that the Agees were separated, and all the positive testimony is that he was told that a divorce was contemplated. The divorce suit was actually filed just 3 days after the date of the renewal policy. Divorce proceedings are a matter of public record.

The record justifies the conclusion that Whitehurst knew a divorce was contemplated and that appellant wanted to continue coverage on both cars. Notice to Whitehurst was notice to the insurance company. Appellant, by informing Whitehurst of the impending divorce and of his wishes with regard to the insurance, did all he reasonably could to assure continued coverage for Louise, and he was left with the impression that his insurance coverage was as he desired. If Whitehurst knew that upon divorce Louise would no longer be insured, at the very least he should have informed appellant of this fact and of the steps necessary to continue her coverage. Ap-

pellant should not be made to suffer the consequences of Whitehurst's default. I would reform the contract to provide continued coverage for Louise after the divorce.