Kenneth Dewayne BURDICK, Kim Deann Burdick, and Misty Dawn Burdick, all minors, By and Through their father, Michael M. Burdick, as next friend, Plaintiffs-appellees,

v.

INDEPENDENT SCHOOL DISTRICT NO. 52 OF OKLAHOMA COUNTY, Midwest City-Del City School Board, Melvin Decker, Louise Moore, Dr. Anthony C. Thomas, and Billy Crouch, Defendants,

v.

INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, Oklahoma, Intervenor-appellant.

No. 60914.

Supreme Court of Oklahoma.

June 25, 1985.

As Corrected June 27, 1985.

Ronald L. Day, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for intervenor-appellant.

Jack B. Fried, Oklahoma City, for plaintiffs-appellees.

OPALA, Justice.

The appeal presents three primary questions: [1] Did the trial court lack subject-matter jurisdiction? [2] May the doctrine of estoppel be applied against a school district under the facts of this case? and if so, [3] Is the application of estoppel clearly contrary to the principles of equity jurisprudence or to the weight of the evidence? To the first and third questions we answer in the negative; to the second in the affirmative.

Early in 1975 the Burdick family [hereafter the Burdicks] considered purchasing a new home at 417 King Avenue, Midwest City, Oklahoma. Desiring that her children [also referred to as students] attend Midwest City-Del City Schools, Mrs. Burdick telephoned the offices of Independent School District No. 52 (Midwest City-Del City School District) [hereinafter Mid-Del] and Independent School District No. 89 (Oklahoma City School District) [hereinafter District 89] to find out in which district their future home was situated. She was told by officials of both districts that 417 King Avenue was within the Mid-Del school district. Relying upon this information the Burdicks purchased the house on King Avenue in April of 1975. Their children were enrolled in Mid-Del schools and continually attended those schools without objection from either Mid-Del or Oklahoma City school districts until August of 1980. The Burdicks were then informed by Mid-Del that the boundary lines "had been changed", and that because they reside within the Oklahoma City school district their children could no longer attend Mid-Del schools.[1] Through their father the minor children brought this suit. They obtained a temporary restraining order that kept Mid-Del from effecting the threatened transfer. District 89 intervened. The trial court found that (1) the Burdicks' residence lies within District 89, (2) Mid-Del represented to the Burdicks, in April of 1975, that their residence was in the Mid-Del

1. The evidence in the record reveals that the location of the boundary line dividing the area in question has not changed during any period material to this controversy.

district, and (3) not until August of 1980 did Mid-Del learn that the Burdicks' residence was in fact within District 89 and so informed them. The unmistakable effect of the court's decree was that both Mid-Del and District 89 were estopped from preventing the Burdick children from continuing in the Mid-Del schools. Only District 89 appealed from this decision.

## I

### THE DISTRICT COURT WAS VESTED WITH SUBJECT–MATTER JURISDICTION TO GRANT THE RELIEF REQUESTED

Based upon the general rule that exhaustion of available administrative remedies is a prerequisite to judicial review,[2] District 89 contends the trial court lacked subject-matter jurisdiction. As suggested by District 89, the remedies the Burdicks failed to seek are: (1) an agency "residency determination" under 70 O.S.1981 § 1–113;[3] and (2) a transfer under 70 O.S.1981 §§ 8–101 et seq.

### A

■ The relevant provisions of § 1–113 state that "[t]he residence of any child for school purposes shall be the legal residence of the parents ...," and that "... [a]ny question as to the place of residence ... shall be decided by the county superintendent...." Since no one has questioned that the Burdick children live with their parents, and District 89 has stipulated that the children's legal residence is 417 King Avenue, Midwest City, Oklahoma, invocation of a so-called "residency determination" proceeding would have been a vain, useless and ineffectual remedy. For these reasons, § 1–113 constituted here no jurisdictional impediment to a direct district court action for determination of the students' status.

### B

Throughout the five-year period of the Burdick children's unquestioned attendance of Mid-Del schools, and up to the time it was discovered that they did reside within District 89, all officials concerned in this case doubtless entertained the view that the students did reside within the Mid-Del school district. It was after Mid-Del informed the Burdicks that their children could no longer attend its schools—because the boundary line "had been changed"—that the Burdicks sought to enjoin Mid-Del from transferring their children from Mid-Del to District 89. The Burdicks' position was that they reside within the Mid-Del school district or, in the alternative, that both Mid-Del and District 89 are estopped from compelling the threatened transfer. The Burdicks' claim was tendered to the court, and the case tried as, a controversy over a clouded school district boundary line. The trial court resolved the dispute in favor of District 89, finding that the Burdicks' residence does in fact lie within District 89.

■ Transfers *stricto sensu* are legislatively regulated. The statutes address themselves to changes in schools from the district in which a student resides to another school district.[4] Until the boundary dispute was resolved and the exact line ascertained, no one could have known, with reasonable certainty, whether a transfer from one district to another would have been a practicable or even possible remedy. Transfers within the same district are neither necessary nor available. The gravamen of the Burdicks' suit was not a quest for transfer but rather their claim that the children are entitled *to remain* in Mid-Del schools. No administrative remedy then in effect was suitable or effective to accomplish this goal. We hence hold that under the facts of this case the students need not

---

**2.** *Martin v. Harrah Independent School District,* Okl., 543 P.2d 1370, 1372 [1976].

**3.** Section 1–113 was last amended in 1984. Okla.Sess.L.1984, c. 182 § 1.

**4.** 70 O.S.1981 § 8–102.

have sought a transfer before commencing the instant action in the district court.[5]

## II

## UNDER THE FACTS OF THIS CASE THE DOCTRINE OF ESTOPPEL WAS INVOCABLE

 Generally, Oklahoma jurisprudence does not allow the application of estoppel against the state, the political subdivisions or agencies, unless its interposition would further some principle of public policy or interest.[6] The rationale for recognizing a governmental shield from estoppel is to enable the state to protect public policies and interests from being jeopardized by judicial orders preventing full performance of legally-imposed duties.[7] Hence, some stronger, more compelling policy or interest must be advanced before estoppel could be invoked against either the state or a public agency.[8]

 District 89 urges that application of estoppel against it would thwart Oklahoma's public policy—as articulated by the statutes governing schools and school districts—that students generally must attend schools maintained by the school district in which they reside. While we agree with District 89, the pivotal question here is whether the facts and circumstances of the instant case implicate some prevailing public interest which will except it from the general rule precluding the use of estoppel against the government. We hold that they do.

 The Burdick children were formally enrolled in Mid-Del schools in 1975 and continued to attend those schools without a challenge until 1980. They were taken to school by Mid-Del school buses that ran in front of their home, while District 89 vehicles completely by-passed the Burdick neighborhood. The bus routes so followed have been in place for over twenty years. The Burdicks voted in Mid-Del school district elections, and their names were entered on that district's official computer printout list of eligible voters. In short, (1) the Burdicks, after full and truthful disclosure, entertained an honest belief, kindled and acquiesced in by Mid-Del and District 89 officials, that they lived in the Mid-Del school district; and (2) their children continually attended Mid-Del schools for a considerable period of time without objection from either school district. These factors, viewed in combination, impel us to conclude that the students occupied the status of *de facto* Mid-Del students.[9] The quintessen-

---

5. The district court was vested with reviewing jurisdiction by the terms of 12 O.S.1981 § 951 which provide:

 "A judgment rendered, or final order made, by any tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated, or modified by the district court except where an appeal to some other court is provided by law." The form of relief granted to the students—i.e., a permanent injunction—lies well within the district court's equitable jurisdiction and is not dependent upon specific statutory authorization. *Marley v. Cannon,* Okl., 618 P.2d 401, 404 [1980].

6. *Board of Education of Independent School District No. 48 of Hughes County v. Rives,* Okl., 531 P.2d 335, 337 [1974].

7. *Independent School District No. 4 of Sequoyah County v. State Board of Education,* Okl., 451 P.2d 684, 686 [1969].

8. *Cf. Independent School Dist. No. I-2 of Stephens County v. Independent School Dist. No.*

*I-23 of Jefferson County,* Okl., 553 P.2d 150, 152 [1976] (The students' right to a transfer was of sufficient public interest to allow application of estoppel by laches against a school district); *Independent School Dist. No. 4 of Sequoyah County v. State Board of Education, supra* note 7 at 687 (Where a school district has been established and in operation for more than 16 years, public policy militated against declaring it fatally defective unless there was some insuperable obstacle); *but see Board of Education of Independent School Dist. No. 48 of Hughes County, supra,* note 6 at 337 (Right to a transfer, based on grounds no longer available under statute, was not of sufficient public interest to permit application of estoppel by laches against the school district).

9. A *de facto* student is one who, upon full and truthful disclosure of information concerning his entitlement to the educational services sought, was accepted, without reservation, as legally qualified for enrollment, although there was then in existence a later-discovered legal infirmity. *Cf. Hoskins v. Dickerson,* 239 F. 275,

tial objective of the Burdick lawsuit was to enforce the maintenance of the status quo by obtaining recognition for their children's *de jure* or *de facto* status as Mid-Del students. District 89, on the other hand, sought to establish that the Burdick children should be placed in the status of *de jure* students in the Oklahoma City school district.

 The Burdicks' attainment of a *de facto* status serves here to overcome any general aim of the law in placing students in schools of the district in which they reside. The public interest clearly favoring the position of the Burdicks is that of promoting continuity of attendance once a residential status has been honestly established and openly maintained in a given school system, and there has been no intervening change in its legal boundaries. We hence hold that protection of such a *de facto* status implicates sufficient public polity considerations to afford here a basis for interposing estoppel against a public agency.[10]

### III

### THE TRIAL COURT'S APPLICATION OF ESTOPPEL IS NOT CLEARLY CON-

### TRARY TO THE WEIGHT OF THE EVIDENCE

The trial court determined that both Mid-Del and District 89 were estopped from asserting that the Burdick children must now attend schools in District 89 as *de jure* students of that district. District 89, the sole appellant, urges that it should not be held estopped because (1) it made no representation that the students' residence is located within the Mid-Del school district; (2) it was without knowledge that the students were attending Mid-Del schools while residing in District 89;[11] (3) school district boundaries are a matter of public record, and the means of knowing the boundary lines were available to the Burdicks; (4) estoppel may not be asserted against a party whose representation was based upon mistake; and (5) the trial court made no specific findings of fact relating to estoppel on the part of District 89.

 Even though estoppel was applied against District 89 without specific findings of the underlying facts, a general decree or judgment is deemed to include every specific finding on any and all issues necessary to sustain it,[12] and in suits of

---

277 [5th Cir.1917]; *Bedingfield v. Louisville First Nat. Bank,* 61 S.E. 30, 32 [Ga.App.1908], quoting from an English case, Parker v. Kett, Holt, K.B. 221, [1558–1774] All E.Rep. 199, 200 [1701]. The *de facto* student status of the Burdick children provides *per se no* basis for their *continued* enrollment as students in Mid-Del schools. It is the doctrine of equitable estoppel that, *under the facts in this case,* enables them to remain in the district without attaining a *de jure* status. (See Part III of this opinion). Cf. *Hamrick v. George,* Okl., 378 P.2d 324, 331 [1963]; *Chicago, R.I. & P. Co. v. Carroll, Brough, Etc.,* 114 Okl. 193, 245 P. 649, 651 [1926]; *State v. Tapp,* Okl., 380 P.2d 260, 268 [1963].

**10.** A suit to enjoin a school district from compelling students to attend schools in another district presents a public-law issue. A public-law issue may be considered on appeal upon a theory not presented to the trial court. *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 21 [1982]. Even though the Burdicks do not argue the issue of their *de facto* status as a factor in overcoming the state's interest in the placement of students in the district in which they reside, the public-law character of the con-

troversy leaves us nonetheless free to give that status our consideration.

**11.** District 89 contended that it should not be held estopped because it was

"not aware of the situation" until it was informed by the county assessor that it had been receiving the school district's share of ad valorem tax revenues derived from assessments upon the Burdick residence. According to the testimony from the chief deputy in the county assessor's office, the assessor relies, for distribution of tax revenue, upon the maps from the county superintendent's office. *The very same maps* are utilized by Mid-Del and District 89 personnel to determine in what school district real property is located. *All these maps proved facially inconclusive as to the district in which the Burdick residence was situated.*

**12.** *Garrett v. Reinhart,* 169 Okl. 249, 36 P.2d 884, 885 [1934]; *Stewart v. Martin,* 193 Okl. 686, 146 P.2d 836 (syllabus 4) [1944]; *Barry v. Hubbard,* 195 Okl. 112, 155 P.2d 512, 515 [1944]; *Nelms v. Newton,* 199 Okl. 241, 185 P.2d 202, 203 (syllabus 3) [1947]; *Glasgow v. Beaty,* Okl., 476 P.2d 75, 78 [1970].

equitable cognizance, a trial court's decree will be set aside *only* if it is clearly contrary to the weight of the evidence.[13]

The elements necessary to establish an equitable estoppel are: (1) a false representation or concealment of facts, (2) made with actual or constructive knowledge of the facts, (3) to a person without knowledge of, or the means of knowing, those facts, (4) with the intent that it be acted upon, and (5) the person to whom it was made acted in reliance upon it to his detriment.[14]

According to the evidence, when District 89 received inquiries from the public, it had long been in the practice of informing citizens whether they do reside within the district. One witness (for District 89) testified that during the summer months it was not unusual to receive two to three hundred inquiries each day. Information given by school district officials was derived from District 89 maps as well as maps and plats secured from builders, other school districts, the county and the county superintendent. Although most, if not all, of the sources used are accessible to the public, they utterly failed in this case to yield with clarity the data needed for determining precisely the district in which the Burdicks reside.[15]

We hence conclude that (1) District 89 knew or should have known that the affected public, and especially those who resided in clouded "borderline" areas, would rely upon its expertise; [16] (2) District 89 had the advantage of access to materials shedding light on the clouded boundary line which were not readily accessible to the Burdicks; and (3) the Burdicks were without any precise public-record sources or other means of their own to verify that they did not reside within District 89.

This suit is a citizen's contest with a public service agency. District 89's interest in students entitled to its service is not proprietary, but rather governmental or accommodative. When District 89 represented to Mrs. Burdick that her proposed residence did not lie within its boundaries, it effectively refused to provide her children with school services. Based on facially inconclusive maps then in its hands, District 89 doubtless *could have* claimed these students as authorized recipients of the governmental largess due them. Its inaction, if not outright refusal to enroll the children, induced the Burdicks to rely, for over a period of five years, for their accommodation upon Mid-Del. Given the after-adjudicated fact that they actually reside within District 89, it is clear that the Burdicks did suffer from detrimental reliance because, among other factors, their decision to purchase the home was based upon the representations of both District 89 and Mid-Del that the home site about to be

13. *Board of County Commissioners of Marshall County v. Snellgrove,* Okl., 428 P.2d 272, 273 [1967].

14. *Board of County Commissioners of Marshall County v. Snellgrove, supra* note 13 at 276; *State ex rel. Western State Hospital v. Stoner,* Okl., 614 P.2d 59, 64 [1980].

15. For example, one of District 89's maps—which showed King Avenue to be located solely within District 89—did not indicate that King Avenue had been further developed and that it now extended into the Mid-Del District. It could not be determined by that map where the Burdick house was located and whether it would have been in District 89. In another map the dividing line between the two school districts was drawn so widely that it would have been impossible to tell on which side of the line the Burdick house lay.

The legal description attached to District 89's petition for intervention was also shown, by the Burdicks' expert witness, to be ambiguous. He testified that depending upon the direction from which the legal description is read—either starting from the point of beginning or reading it in reverse—the Burdick residence could be located in either District 89 or the Mid-Del school district.

16. Although generally estoppel may not be applied against a private party who was without knowledge of the facts or whose statement or conduct was based upon mistake, *St. Louis & S.F.R. Co. et al. v. Mann,* 79 Okl. 160, 192 P. 231, 233 [1920], in the present case we are primarily concerned with the *legal consequences* of a government agency's pattern of misleading conduct, rather than with whether the erroneous information resulted from mistake or lack of knowledge.

*See City of Long Beach v. Mansell,* 91 Cal.Rptr. 23, 3 Cal.3d 462, 476 P.2d 423, 444–445 [1970]; *State ex rel. Dept. of Human Services v. Davis,* 99 N.M. 138, 654 P.2d 1038, 1039 [1982]; K. Davis, Administrative Law Text § 17.06 at 303 [1972].

acquired was located within the Mid-Del district.

The ultimate question here is whether District 89 may *now* assert its claim to be the *exclusive* provider of the government service it had withheld from these students for some five years. We hold that it may not. The student's long-continued *de facto* status, with its origin ascribable to a blurred boundary line produced by inaccurate or facially inconclusive record-keeping by the officials in charge, ripened, through detrimental reliance, into a protectible interest the trial court correctly refused to disturb. The interest is now impervious to invasion by the agency whose misleading course of conduct gave rise to its creation. The Burdicks detrimentally relied upon an erroneous agency communication of a significant, yet obscurely recorded, governmental fact which was not readily verifiable by an ordinary member of the public from some other official or private source. This, coupled with the agency's long period of acquiescence in the students' honestly established and openly maintained *claim* to a *de jure* status in Mid-Del, firmly supports the trial court's application of the estoppel doctrine.

The trial court's decree against District 89 rests on sound principles of equity jurisprudence and is clearly supported by the weight of the evidence.

Affirmed.

HODGES, WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, C.J., and HARGRAVE, J., concur in result.

DOOLIN, V.C.J., concurs in part and dissents in part.

LAVENDER, J., dissents.