## DAVIS et al. v. UNIVERSAL INS. CO.

No. 23379. Dec. 4, 1934.

Carl H. Livingston and Rollin E. Gish, for plaintiffs in error.

Rittenhouse, Webster & Rittenhouse, for defendant in error.

PER CURIAM. This case was tried in the common pleas court of Tulsa county, Okla., upon the petition of Joseph D. Davis and D. L. Knappenberger, as plaintiffs. The suit is for the recovery upon a windstorm and tornado insurance policy. This policy was for a term of one year, commencing the 4th day of April, 1930, and insured the plaintiffs against all direct loss and damage by windstorm, cyclone, and tornado, except as thereinafter provided in said policy, to an amount not exceeding $2,000 on all buildings, structures, tanks, equipment and contents therein while located on certain lands described in the said policy in Creek county, Okla. This policy contained an exclusion clause, the material part of this exclusion clause being as follows:

"Exclusions—There is excluded from the cover of this insurance: accounts, bills, currency, deeds, * * * drilling derricks and drilling rigs; **all rigs and/or derricks; signs and awnings, metal smokestacks; radio equipment outside of buildings."**

The exclusion clause was in a printed form except that part which is emphasized. The part emphasized was a typewritten addition to the printed form in the exclusion clause.

The policy was dated April 4, 1930, and signed by Leo Selinger as local agent. The premium was the sum of $2.26. A windstorm and tornado, on the 25th day of September, 1930, demolished one wooden pumping derrick belonging to the plaintiffs and located on the premises described in the insurance policy. The petition seeks to recover the value of this wooden pumping derrick in the sum of $1,500. The petition also seeks to reform the said insurance policy, alleging a mutual mistake occurred in the proper description of the property covered by the policy. The mutual mistake claimed is that said policy contained an exclusion clause, purporting to except from the cover of the policy, in addition to other things, "all rigs and/or derricks;" that the phrase so quoted was inserted in said policy by mistake, the insertion thereof being contrary to the mutual intention of the parties; and that it was mutually intended and understood that the said policy was to cover the pumping derrick which was situated on the lease and land described in the policy. The wooden pumping derrick was the only property on the lease damaged by the windstorm.

The answer of the defendant company contained a general denial, except that it admitted that it was a corporation as alleged in the plaintiffs' petition, and that it issued the policy of insurance mentioned in the plaintiffs' petition, but specifically denied that said policy was not issued and was not in the form agreed to by plaintiffs and defendant. The answer further alleged that the policy of insurance so issued was in the same identical form in which plaintiffs had been carrying their tornado insurance upon said property for a number of years prior to the issuance of the policy sued upon, and that the plaintiffs well knew that said policy contained the exclusion clause, excluding cover upon "all rigs and/or derricks" which plaintiffs seek to have stricken from the policy involved in this

suit, and praying that the plaintiffs take nothing by this action. This answer was duly verified. To this answer the plaintiffs filed a reply, denying each and every allegation of new matter contained in the answer of the defendant, and further pleaded that in the event any policy was issued by this defendant or any other company on the property involved, excepting from the obligation thereof the said pumping derrick, such exception was erroneously inserted in said policy and such insertion was contrary to the mutual intention of the plaintiffs and the insurance carrier and that the plaintiffs were never aware of such facts. These constituted the issues.

The case came on for trial before a jury, and, at the close of the evidence of the plaintiffs, the defendant interposed a demurrer to the sufficiency of the evidence of the plaintiffs to call for a reformation of the insurance policy so as to cover the pumping derrick demolished by the windstorm. The plaintiffs then asked permission to reopen their case and offer further testimony, which leave was by the court. granted. The plaintiffs then offered the further testimony of Leo Selinger, the local agent of the insurance company, and then rested. The defendant then renewed its demurrer to the' sufficiency of the evidence of the plaintiff to warrant a reformation of the insurance policy and to establish a cause of action in favor of the plaintiffs and against the defendant. After argument of counsel, this demurrer was sustained by the court. The plaintiffs then asked leave to dismiss without prejudice, which leave was denied by the court. To all of these rulings the plaintiffs then and there excepted. A journal entry of judgment was filed in accordance and in harmony with the rulings of the court. Motion of the plaintiffs for a new trial was filed in due time, and the case is now in the court on appeal. The plaintiffs allege and argue in their brief two assignments of error as follows:

"1. The court erred in sustaining the defendant's demurrer to plaintiff's evidence.

"2. The court erred in admitting incompetent testimony which was objected to by the plaintiffs and excepted at the time of the trial."

The evidence of the plaintiffs is easily divisible into two parts, that which is favorable to a reformation of the insurance policy so as to cover the pumping derrick, and that which is unfavorable to a reformation.

The handling of the insurance on the lease and property owned by the plaintiffs seemed to have been done by Joseph D. Davis. There seems to be no question about the pumping derrick being demolished by a windstorm on the 25th day of September, 1930. Mr. Davis testified that he gave to Mr. Simon Selinger a list of the property to be insured on the Betty Church lease, which is the lease and property involved in this suit. He identified exhibit 1 as being a carbon copy of the list of property submitted to Mr. Selinger to be insured. The description of the property contained in this list being as folows:

| Description | Valuation |
|---|---|
| One (1) Wooden Derrick (pumping Derrick) | $2,050.00 |
| One (1) 100 Barrel Steel Tank | 100.00 |
| One (1) Gun Barrel Tank | 50.00 |
| | $2,200.00 |

Davis claimed that this list of property was given to Simon Selinger a few weeks before April 4, 1930, when Selinger called and asked him about having the tornado policy renewed. Simon Selinger was the father of Leo Selinger. Leo Selinger was the person authorized to sign insurance policies of the defendant company as its local agent. Simon Selinger testified that he had been in the insurance business in Tulsa for about 15 years and was in business with his son, Leo Selinger: that he solicited insurance for the defendant company; that he called at the office of Mr. Davis and told him about a $2,000 tornado insurance policy expiring during the month of April, and asked for the privilege of renewing the policy. He testified that Davis gave him the privilege of renewing the tornado policy and at the same time of renewing a fire policy on the Betty Church lease expiring about the same time. He testified that Davis gave him a list of property to be insured which was similar to exhibit 1 testified to by Mr. Davis; that he took this list of property and gave it to his son, Leo, to write the policies. The policy was written and then delivered at the office of Mr. Davis and it seems to have been filed away without having read by Mr. Davis as he claims. The premium on this tornado policy was $2.26. He further said that at the time he solicited the application for tornado insurance from Mr. Davis, it was his intention to cover the items specified on this list.

Leo Selinger testified that he was in the insurance business with his father in April, 1930, writing fire, tornado and automobile; that his father solicited business for the

Universal Insurance Company and would turn the insurance over to him to write; that his father brought in a list of items that he wanted insured for Mr. Davis and wanted him to write the fire and tornado insurance on these various items; that he took the list and turned it over to his stenographer to write the policy; that he intended prior to the time that the policy in question was executed and delivered to cover the property itemized on the list: that he attached exclusion form No. 138 to the tornado policy, but he did not know that this exclusion clause contained the words, "all rigs and/or derricks." This evidence would seem to support right of reformation.

Now, for the evidence that is unfavorable to reformation. The defendant brought out on cross-examination of the Selingers that the plaintiff, Davis, and his then partner carried a fire insurance policy on the property involved in this suit with the Camden Fire Insurance Company for the years of 1927, 1928, 1929 and 1930. The first fire insurance policy being written on April 23, 1927, renewed April 23, 1928, renewed again April 23, 1929, and renewed again April 23, 1930. These policies were for the sum of $2,000 each, rate $1.50, premium $30 for each year and covering the property involved in this suit. These fire policies contained the same exclusion clause except that the exclusion clause on the fire policy was the printed form only and did not contain the additional typewritten clause added to the exclusion clause in the tornado policy. Consequently, their fire policy did not in the exclusion clause contain the words, "all rigs and/or derricks." Therefore, it seems to appear that the plaintiffs had fire protection on the wooden pumping derrick, and for this, including the two tanks, they paid a premium of $30 per year. The evidence on close examination further shows that on April 4, 1928, there was issued to the plaintiff, Davis, and his then partner a tornado policy in the Camden Fire Insurance Company in the sum of $2,000, covering the same property described in the policy involved in this suit. The premium on this policy was $2.26. It contained the same exclusion clause as the policy sued upon herein, including the typewritten addition thereto, with the words, "all rigs and/or derricks." On April 4, 1929, this policy was renewed for a year in the same company, with the same exclusion clause and the same premium of $2.26. It will be noted that the tornado policy on this property written on the 4th day of April, 1930, was in the same sum, the same premium and

the same exclusion clause, but written in the Universal Insurance Company instead of the Camden Fire Insurance Company. The court evidently admitted these prior tornado insurance policies in evidence as having some probative value in determining whether it was a mutual mistake in issuing the tornado policy involved in this suit.

The rate charged for all these tornado policies was $1.13 per thousand, or $2.26 for the $2,000 policy. Simon Selinger, who had been in the insurance business in Tulsa, the then heart of the oil business, for 15 years, testified that the tornado rate on derricks was $80 per thousand, which would be a premium of $160 on $2,000. This question was asked Simon Selinger: "I will ask you to state, Mr. Selinger, if, as a matter of fact, you did not advise the Universal Insurance Company in April, 1930, that no loss could be sustained under this policy of any kind that would exceed $200, and that you considered it an excellent risk, or words to that effect?" Answer: "I did." Here is an admission by Selinger that he informed the company about the time this policy was written that no loss could exceed $200. That statement was made before there was any loss and has more value as evidence than a statement made after the loss. Again, Simon Selinger admitted in his testimony that it was his intention to issue the same and identical policy in the very form it was issued, but that he merely misinterpreted the word "derrick." It does not seem credible to the court that Simon Selinger can consistently say that he thought or intended for this tornado policy to cover the wooden pumping derrick valued at $2,050 on a premium of only $2.26, when he knew that the tornado rate on derricks was $80 per thousand. A glance at the premium on the policy, or a glance at the check that he received in payment of the premium, would immediately challenge his attention to this fact. The plaintiffs offered in their pleadings and in the evidence to allow the balance of a $160 premium in the sum of $157.74 to be deducted from the amount recovered on the policy, but this offer comes after the loss. There is no evidence in the record that the plaintiffs were ready and willing to pay a premium of $80 per thousand for tornado insurance on this wooden derrick. $80 per thousand is a very high rate. It appears that the companies were willing to carry fire protection on this wooden derrick at the same rate as other property on the lease, but were not willing to carry tornado insurance on the derrick at the same rate as other property, because other prop-

erty on the lease was only rated at $1.13 per thousand. This derrick stood from 72 to 84 feet high, and was very much subject to the furies of the storms and elements.

Mr. Davis testified that the Selingers had been carrying his insurance for the last ten years, and in speaking of Mr. Simon Selinger coming to him about renewing the policy about April 30th, said:

"He came to me and told me that the policy had expired and he is rewriting in a different company and so far as I can see I say 'It is all right; he is the agent.' "

Here it appears that Davis told him that it was all right to rewrite the policy, only placing it in a different company. The policy was rewritten on the same property for the same amount, the same premium, and the same exclusion clause. All the dealings for the rewriting of these policies in April, 1930, were made between Mr. Davis and Simon Selinger. The consideration of this testimony reminds us of the adage, "What a person does speaks so loud that you cannot hear what he says." The Selingers in writing these policies and collecting these small premiums of $2.26 all these years and informing the insurance company that the loss could not exceed $200 speak so loud that the court could not well hear what they said about their intentions.

The law applicable to the state of facts as above set forth is shown by the following citations of authority:

Section 6723, Comp. Okla. Stats. 1921 (10514, O. S. 1931), provides:

"Section 6723. Solicitors agents of company. Any person who shall solicit and procure an application for insurance shall, in all matters relating to such application for insurance and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

Don Hartog v. Home Mutual Life Ins. Ass'n (Iowa) 196 N. W. 944, is cited:

"An insurance policy may be reformed to carry out the intention of the parties after loss, where the evidence of a mutual mistake is clear and convincing."

In Home Insurance Co. v. Akers, 96 Okla. 232, 221 P. 493, it was held:

"In order to justify a reformation of a contract, the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy."

In Cantrell v. O'Neill, 109 Okla. 238, 235 P. 232, it was held:

"To justify the reformation of an instrument, failing to conform to the agreement of the parties thereto through a mutual mistake, the proof should be clear, unequivocal, and decisive. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy, but need not be so certain as to go beyond any possibility of controversy."

The trial court in sustaining the demurrer said that the plaintiff's evidence was not sufficient to warrant reformation, referring to the Supreme Court decisions as to quantity of proof required for this purpose. The reformation of contracts is an equity matter for the court. Should the question of reformation have been submitted to the jury, the verdict of the jury would only be advisory to the court.

"Suits for the cancellation or reformation of instruments belong to the jurisdiction of equity and triable by the court without a jury, although a money judgment is also demanded which is merely incidental to and dependent upon the granting by the court of the equitable relief demanded." 24 Cyc. 117.

"In an equitable action, the findings of the trial court should be sustained, unless it appears that his findings are clearly against the weight of the evidence. The findings of the trial court should be strongly persuasive, and should not be set aside, unless this court can say in equity and in good faith that the conclusion reached by the trial court is clearly against the weight of the evidence." Illinois-Oklahoma Petroleum Corp. v. Teter, 153 Okla. 73, 4 P. (2d) 1063.

"The judgment of the trial court as to questions of fact in an equitable proceeding will not be disturbed by this court, unless the judgment is against the clear weight of the evidence." Steiner v. Steiner, 156 Okla. 255, 10 P. (2d) 641.

The plaintiff had not at any time paid the premium required for tornado insurance on this derrick. To allow the policy to be reformed after the loss and the plaintiffs recover would in a measure be allowing them to reap where they had not sown. The trial court found that a mutual mistake had not been established by clear and convincing evidence, amounting to a moral certainty. This court cannot say that the decision of the trial court was clearly against the weight of the evidence.

The second assignment of error of which

the plaintiffs complain is that the trial court erred in admitting incompetent testimony which was objected to by the plaintiffs and excepted to at the time of the trial. This alleged incompetent evidence is that the court permitted the defendant to introduce in evidence on cross-examination of plaintiffs' witness, Simon Selinger, certain fire and tornado insurance policies covering the property on the lease in question for a number of years prior to the issuance of the defendant's policy. The issue between the plaintiffs and the defendant was whether there had been a mutual mistake in including "rigs and/or derricks" in the exclusion clause attached to this policy. Previous policies of fire and tornado had been issued to the plaintiff Davis and his former partner, Sam Moyen. Two of these former policies which were issued in April, 1929, bore an indorsement changing the insured to Joseph D. Davis and D. L. Knappenberger, the plaintiffs herein. As there was some evidence that the policy sued upon was issued as a renewal of a previous policy expiring April 4, 1930, we think that the introduction of the policies renewed might shed some light as to whether there had been a mistake in writing the policy involved in this suit. The policy renewed contained the indorsement making the plaintiffs herein the insured parties in that policy. The fire policies showed that the plaintiffs had protection against fire on the wooden derrick, and that the fire rate on the wooden derrick was the same as the fire rate on other buildings on the lease. But the evidence showed that the tornado rate on the wooden derrick was much higher than the tornado rate on the other buildings on the lease. We cannot see that it was error in admitting any of these policies in evidence for whatever they might be worth in determining the issue of mutual mistake. The plaintiff Davis, in his evidence, nowhere claimed that he desired greater protection in the tornado policy issued on April 4, 1930, than had been carried in the previous tornado policies. The burden of his testimony was to the effect that he thought he had tornado insurance on the derrick all the time, yet, as an oil man, it is hard to see how he could think this when he knew he was only paying a tornado premium of $2.26 a year, while the tornado rate on derricks was $80 per thousand. The following decisions show that there was no error in admitting these policies:

"When relevant evidence, though collateral, has such force and weight as necessarily to be of aid to the trier, it is admissible." Daley v. Metropolitan Life Ins. Co. (N. H.) 128 Atl. 531.

"A habit of doing a thing is naturally of probative value, as indicating that on a particular occasion the thing was done as usual, and, if clearly shown as a definite course of action, is admissible." Jones v. Teasley (Ga.) 105 S. E. 46.

"* * * Where, however, there exists a contract of insurance, not expired, and there is an agreement between the parties to renew the policy, and no change is suggested or agreed upon, it will be implied that the renewal contract includes and adopts all the provisions of the existing contract of insurance." Commercial Fire Ins. Co. v. Morris (Ala.) 18 So. 34, at page 36.

"When the contract is to renew a policy, and there is no evidence introducing new or additional terms, the presumption is that the renewal is for the same time, terms, amount, premium, and to cover the same property as the old policy." Orient Ins. Co. v. Wingfield (Tex.) 108 S. W. 788, at pages 791 and 792.

We think that the admission of these previous insurance policies in evidence was competent as having some probative value in determining the issues involved in this suit.

The plaintiffs in error do not make any complaint in their brief of any error of the court in refusing to allow them to dismiss without prejudice. This court, therefore, presumes that they waived this error, if any.

Therefore, the court finds that the judgment of the lower court should be, and the same is hereby, affirmed.

The Supreme Court acknowledges the aid of Attorneys Theodore Pruett, J. H. Cline, and Toby Morris in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pruett and approved by Mr. Cline and Mr. Morris, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.