## DOUGLAS v. DOUGLAS.

No. 25035. March 24, 1936.

John Adams and A. V. Dinwiddie, for plaintiff in error.

Harry F. Brown and Robert W. Hoyland, for defendant in error.

PER CURIAM. This action was commenced as a suit in equity by James P. Douglas and Lillie Douglas, husband and wife, petition filed May 2, 1930. Thereafter, the

death of James P. Douglas was suggested and the case progressed with Lillie Douglas as plaintiff and Stephen A. Douglas as defendant, on plaintiff's "third amended petition" with a general denial by defendant. The parties will be referred to as plaintiff and defendant, as in the trial court.

By her petition of two counts, plaintiff sought in the first to have set aside a conveyance, by defendant to plaintiff, designated as a "mineral deed," which deed is hereinafter set forth, and for further decree compelling defendant to transfer and convey to plaintiff a full undivided one-third of the oil, gas, coal, and other minerals in and under the lands described in said deed, for a period of 25 years from February 25 1929, and so much longer thereafter as oil and gas should be produced therefrom together with the right to have and receive rents, bonuses, or other profits incident to ownership thereof. The second count sought an accounting and money judgment for one-third of certain rentals and bonuses collected by defendant. The amount of rents and bonuses was not in dispute, and it was conceded by defendant that if plaintiff should have full recovery on her first count, judgment on the second count would follow as a matter of course. The cause was tried to the court, who found generally for the plaintiff, set the deed aside, decreed a new conveyance, and entered money judgment on the second count for $755.72, with 6 per cent. interest from March 21, 1933. After motion for new trial was overruled, defendant filed petition in error in this court with case-made attached.

For reversal and judgment in his favor, defendant, in his brief, relies upon and has presented the following assignments of error, which will be considered in inverse order to that set out:

"Second. Because said judgment and decision of the court is not sustained by sufficient evidence.

"Third. Because said judgment and decision of the court is contrary to the law."

In the first count of her petition, plaintiff alleges. among other things, that James P. Douglas, now deceased, and Stephen A. Douglas, defendant were brothers. That prior to January 14, 1929, each owned an undivided one-third fee interest in the lands involved in this suit, the other one-third being owned by the widow and children of another deceased brother. Petition alleges further that during such ownership for a period of about 25 years and until the first of the year 1929, defendant acted for himself and as agent for his two brothers in renting and managing the farm, and further alleges that great confidence was reposed in defendant in all matters pertaining to the farm. That in the latter part of the year 1928 defendant made an offer to James P. Douglas, plaintiff's husband, to purchase from him the one-third interest of the said James P. Douglas. That after consideration, James P. Douglas decided to sell, suggested, however, that he would execute a deed, reserving to himself one-third of the mineral rights in and under the lands. That this form of conveyance was not satisfactory to the defendant, and after further consideration it was agreed that James P. Douglas should convey a full one-third fee interest to defendant and that defendant would then convey to Lillie Douglas, plaintiff, a full one-third interest in all the oil, gas, and mineral rights lying in and under said lands, for a period of 25 years and as long thereafter as oil or gas should be produced. That because of the trust reposed in defendant and past relationships, preparation of the deeds was left to defendant. That at the time deeds were to be passed and the deal closed, defendant assured plaintiff that the "mineral deed" conveyed to her a one-third mineral interest for the time stated. That at said time. to wit, February 28, 1929, consideration was paid, deeds exchanged and filed for record. That a month or so after the recorded mineral deed had been returned to plaintiff she discovered that the said mineral deed was not in conformity with the previous agreement. Plaintiff further alleged that the said mineral deed was void on its face and conveyed no mineral interest whatever. and prayed for relief as above stated.

The mineral deed sought to be canceled and hereinabove mentioned, omitting acknowledgment and endorsements, is as follows:

"Mineral Deed.

"Know All Men by These Presents:

"That Stephen A. Douglass and Jennie Douglass, husband and wife, of Logan county, state of Oklahoma, for and in consideration of the sum of one and additional dollars cash in hand paid by Lillie Douglass hereinafter called grantee, and other good and valuable considerations, the receipt of which is hereby acknowledged have granted, sold .conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantee an undivided one-sixth of the landowner's one-eighth of the oil and gas usually provided for in oil and gas leases that may be produced from the following described land in Logan county, Okla., to wit:

"The southeast quarter (S. E. ¼) of sec-

tion seventeen (17), township fifteen (15) north of range one (1), east of the I. M., it being understood and agreed that under this conveyance the grantee is to receive two and one-twelfth per cent. gross of all oil and gas in and under the above-described lands, payable as, if. and when the same is produced under the terms, conditions and covenants of any existing or subsequent oil, gas or mineral lease or leases. and that grantee is not to participate in any rentals or bonus received from such leases, and grantee hereby waives the right to the execution of any and all subsequent oil, gas or other mineral leases without the signature of the grantee or his assigns.

"To have and to hold the above-described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said grantee herein his heirs and assigns for a period of twenty-five years from the date thereof, at which time the interest herein conveyed shall revert to the then record owner the same as if formal assignment or release of the same were executed, but if there were oil. gas or other minerals produced or being produced at the expiration of said twenty-five year period, then this will extend and be in force as long as it is under the then existing lease.

"Witness our hands this 25th day of Feb. 1929.

"(Signed)    Stephen A. Douglass
"Jennie Douglass."

We will first notice defendant's assignment of error "Third," that "the judgment and decision is contrary to law." Counsel for defendant argues that the trial court erroneously found and held the above-quoted mineral deed was void on its face because the deed contained no grant of ingress and egress. Defendant contends that the deed is valid and cites in his support the case of Newbern v. Gould, 162 Okla. 82. 19 P. (2d) 157, while counsel for plaintiff argues that the deed is void under the case of Morgan v. McGee. 117 Okla. 212. 245 P. 888. The trial court made no special finding as to the validity of this deed, in so far as the question of ingress and egress is concerned, but. as has been shown before, did make a general finding for the plaintiff. As will be shown in considering defendant's "Second" assignment of error, we cannot support the finding and judgment of the trial court as to all matters therein considered on the theory of fraud and/or mistake. therefore, we must then see if it can be supported on any other ground. Where a judgment might have been based upon either of two or more grounds, but the specific ground is not pointed out, the judgment will not be disturbed on appeal if the evidence supports it on either ground

(Hines v. Bacon, 86 Okla. 165, 207 P. 93); and even though the court gives a wrong reason for its judgment or considers immaterial issue, if the result is correct, it will not be set aside on appeal. Section 252, O. S. 1931; Goehler v. Grove, 108 Okla. 159, 234 P. 622; St. Louis-San Francisco Ry. Co. v. Matthews, 174 Okla 167, 49 P. (2d) 752. It therefore becomes necessary for us to pass upon the validity of this deed in so far as it was affected by lack of a provision for ingress and egress. Without considering the quantum of the estate conveyed, it may not be amiss to state, as briefly as possible, the facts pertaining to this transaction in so far as the question under consideration may be involved. James P. Douglas owned an undivided one-third fee-simple interest in the lands involved, and plaintiff, Lillie Douglas, was his wife. No part of the lands was occupied as a homestead by any of the parties. James, joined by Lillie, conveyed the one-third fee to Stephen A. Douglas with the understanding that Stephen would convey to Lillie a certain mineral or royalty interest. On the trial. witnesses for both sides used the words "mineral interest" and "royalty interest" interchangeably and as if they meant one and the same thing. From this statement, then, it will be seen that the instant case does not come within the facts of the case of Morgan v. McGee, supra, for the reason that in the latter case the conveyance of the mineral interest was by the fee owner to one who had never previously had an interest of any kind in the lands described. The facts in the instant case also differ from those in the case of Newbern v. Gould in that the mineral interest in the last-mentioned case was to be reconveyed, as a part of the same transaction, by the grantee of the fee to the grantor of the fee, which was in effect a reservation of the minerals in said grantor, while in the instant case James conveyed the fee to Stephen with the understanding that Stephen would convey certain mineral or royalty interest to Lillie. Paragraph No. 1 of the "Syllabus by the Court" in the Newbern Case reads:

"1. Where the unqualified owner of real estate, by deed, grants and conveys to another, who theretofore had no interest in the land. the minerals, oil, and gas on and in and under the surface thereof, without also granting the right of ingress and egress for the purpose of developing and producing, and there is no agreement to develop, the grantee does not thereby acquire the right of ingress and egress to prospect for and extract such minerals."

If, then, Stephen accepted the title to the fee with and upon the understanding that

he would convey certain interest to Lillie, he, Stephen, thereupon became trustee of such interest for the use and benefit of Lillie, and this rule is so well recognized that we deem the citation of authority unnecessary. The least that can be said is that Lillie became the owner of her equitable interest at the same moment and by the same instrument that Stephen became the owner of the fee, so, therefore, it cannot be said that Lillie had no previous interest in the property at the time Stephen delivered to her. Lillie, the above-quoted "mineral deed." This being so, the facts of the case are not within the rule laid down in the paragraph of the syllabus above quoted. We feel that this last-mentioned rule should not unnecessarily be extended, and therefore hold that the "mineral deed" in question was not ineffectual because it contained no provision for ingress and egress. Under the facts of this case so far stated and considered, the law will raise a right of ingress and egress by implication in the same manner and to the same extent as will be done "where the owner of an unqualified fee executes a deed to the land, reserving to himself an interest in the minerals or oil and gas," the part in quotations being taken from paragraph No. 2 of the syllabus, Newbern v. Gould, supra. The method or manner in which the conveyance was perfected, however, is not the only thing we have to consider in passing upon the validity of the deed in question. It will be noted that the "mineral deed" contains this provision:

"* * * And that grantee is not to participate in any rentals or bonus received from such leases, and grantee hereby waives the right to the execution of any and all subsequent oil, gas or other mineral leases without the signature of the grantee or his assigns."

By the acceptance of a deed, in the absence of fraud or mistake, the grantee is bound by the provisions thereof the same as if he too had signed the deed. Eidman v. Drewes 269 Ill. App. 264; Employers Indemnity, etc., v. Garrett (Mo.) 38 S. W. (2d) 1049. What, then, is the meaning of the last above-quoted provision? The right to lease the lands is fixed in the grantor with no similar right in the grantee. Nor has the grantee a right to enter upon the lands and drill and prospect for or to produce oil, gas, or other minerals; for either the right of the grantee to lease or the right to drill, prospect, and produce the said lands would enable the grantee to have and recover the rentals and/or bonuses or to effectually bar the recovery of such rents and bonuses by the grantor. In either case, the result would be in direct contravention of the rights vested in the grantor.

We have not overlooked that part of this court's opinion, making statement of some of the facts, in the case of Newbern v. Gould, viz.:

"The cause was tried upon the issues thus joined resulting in a general finding for defendant and decree reforming the deed as prayed for, reserving, however, to plaintiff full right to lease the land for oil, gas, etc., and the right to collect and retain all bonus money and annual rentals for such leases."

It will be noticed that the reformation referred to was the insertion in the conveyance of a provision for ingress and egress on the affirmative relief asked for by the defendant in that case. Since the plaintiff in the Newbern Case was entitled to "full right to lease * * * and retain all bonus money and annual rentals for such leases," we should have said in that case that the defendant therein had not shown herself entitled to the reformation, and our holding in said case in so far as it affirms the decision of the lower court in ordering such reformation is hereby overruled. Otherwise, we do not mean to depart from what was said in that opinion. Of course, it might be asked, What if the grantor failed or refused to lease? While such a state of affairs is hardly probable, it is entirely possible, but such possibility is not a reason why this court should fail to give effect to the agreement of the parties. Time enough to consider just what relief, if any, should be awarded to the grantee if and when this contingency arises. Since the grantee in the above-quoted "mineral deed" neither had the right to lease nor the right to enter the lands for production purposes, it follows that there was no occasion for making a provision therein for ingress and egress, and that the said deed, in so far as the want of said provision is concerned, was neither void on its face nor ineffectual.

Defendant's second assignment of error, "Because said judgment and decision of the court is not sustained by sufficient evidence," has been briefed by both counsel for plaintiff and counsel for defendant and in such briefs discussed as if such assignment had read "because said judgment and decision is against the clear weight of the evidence," and we will so consider this assignment. Both parties have cited cases from this court as to what relief may be had on appeal to this court, but it is not necessary to refer to all of such citations here, since no rules of law are better recognized than:

(a) "In an action of equitable cognizance, the presumption is in favor of the finding of the trial court, and it will not be set aside unless the same is against the clear weight

of the evidence." Noble v. Bodovitz, 175 Okla. 432, 52 P. (2d) 1046.

(b) "In a purely equitable case, this court will consider the whole record, weigh the evidence, and where the judgment of the trial court is clearly against the weight of the evidence, will render, or cause to be rendered, such judgment as the trial court should have rendered." Ruland v. Bohner, 149 Okla. 36, 299 P. 167; Mackey v. Lefeber, 172 Okla. 99, 45 P. (2d) 148.

Plaintiff, supported by her daughter, Jeulla Douglas, testified that defendant was to convey to her a one-third mineral interest for a period of 25 years, etc. That because of business relations extending over a period of 25 years past, because of friendship and kinship, plaintiff put trust and confidence in the defendant. That she did not understand mineral deeds, but that defendant claimed he knew all about such deeds. That a short time before deeds were to be exchanged and the deal closed, defendant presented to plaintiff the above-quoted deed. That plaintiff then protested that said deed should read one-third— "and I says, 'Stephen, you should have one-third where you have one-sixth'; and he says 'Now, Lillie, you don't understand mineral deeds, this deed is all right, that is the way the oil company designates these things, that means the same thing to you, they have to have their share.' I says, 'Stephen, if there is anything wrong with this deed and it isn't right, you will have to make it right'; and he says, 'Sure, I will.' "

Testimony on behalf of defendant's witnesses was to the effect that plaintiff was to receive by mineral deed one-half of the one-third formerly owned by James P. Douglas, or a one-sixth. The total number of acres in the farm was 160, in which James had owned an undivided one-third. Defendant testified that it was his intent to deed to plaintiff a 26 2/3 acre mineral interest and thought he had done so by the mineral deed above set out. It is not necessary for us to determine whether the deed in question conveyed as much as an undivided one-sixth, since the trial court found and determined that the interest which defendant was to convey was an undivided one-third interest instead of an undivided one-sixth interest. We find in the record ample testimony in support of this finding, and therefore this finding that plaintiff was to have and received an undivided one-third mineral interest for a period of 25 years, etc., will not be disturbed on appeal.

There is a further finding of the trial court however, with which we cannot agree. By the entry of money judgment for the sum of $755.72, with interest, in favor of plaintiff and against defendant, the trial court necessarily had to find and decree that plaintiff was entitled to have and recover not only the one-third mineral interest, but also the right to have and receive an undivided one-third of all mineral bonuses and rentals. On behalf of plaintiff it was testified that she was to receive one-third mineral interest and all that went with it. She further says that there was no agreement that defendant was to have the bonuses and rentals, and this was the gist of her testimony. At no time did she testify as to any conversation or words of agreement between the parties from which it could be said that the question of bonuses and rentals was ever discussed. For the defendant it was testified that plaintiff and her husband were told by defendant that he would have to borrow the money to pay for the interest purchased and that he would have to have the bonuses and rentals to pay off the mortgage for this loan and to pay the taxes on the property. In her rebuttal, plaintiff did not deny this testimony. It was further shown that defendant did borrow the money to pay to plaintiff's husband, James P. Douglas, and a mortgage was placed upon the lands. Defendant's testimony showed that three separate mineral deeds were submitted to plaintiff for examination, while plaintiff says that only two deeds were submitted. Each of the three deeds was placed in evidence. It is not necessary to set out these deeds in full, but for the question before us it is sufficient to say that plaintiff admits that the mineral deed, defendant's exhibit 1, was submitted to her and left in her possession a day and night for inspection and examination. This deed contained the following provision: "It is understood and agreed that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee." This last-mentioned deed was refused by plaintiff, and on cross-examination she testified that she turned it down because it was to terminate at the end of 25 years even though it was then producing oil or gas, and "I turned it down on that thing alone." As to the mineral deed which she accepted plaintiff's exhibit A, she testified that it was delivered to her 20 minutes before the deal was to be closed. Her own testimony shows that she read this deed, because, as shown above, she stated to defendant that it should read one-third where it said one-sixth, yet at no time does she say that she made any objection to the deed other than the amount of the

estate to be conveyed. That portion of the deed concerning rentals, bonuses, and the right to lease reads as follows:

"And that grantee is not to participate in any rentals or bonus received from such leases, and grantee hereby waives the right to the execution of any and all subsequent oil, gas or other mineral leases without the signature of the grantee or his assigns."

Not only did plaintiff fail to make any objection to this provision, but there is not a line of testimony in the record that there was any mistake as to the insertion of this provision or that defendant took any advantage of her in this connection, by or through any confidential relationship. Since plaintiff denied having examined the other mineral conveyance, defendant's exhibit 2, we are not quoting from it, but it also contained a provision concerning rentals bonuses, and leasing similar to the one last above quoted.

From what has been said it appears that the finding of the trial court that plaintiff was entitled to bonuses and rentals is clearly against the weight of the evidence and the entry of a money judgment in favor of plaintiff against defendant erroneous.

There is no charge by plaintiff nor evidence to sustain one, if such charge had been made, that there was any mistake or fraud with reference to that part of the last above-quoted provision which reserves to defendant the sole right to lease. The court's decree in effect takes this right from the defendant without justification, and is also clearly against the weight of the evidence. In the absence of fraud or mistake, the provisions of the deed must be accepted as the written evidence of the former agreement of the parties, but even if the parties had originally had a definite understanding and agreement that plaintiff was to have the rents and bonuses, a subsequent acceptance of a deed or writing, which was free from fraud or mistake that gave the rents and bonuses to the defendant, amounted to a modification of the former agreement. Rall v. Purcell, 131 Ore. 19, 281 P. 832.

It was not within the powers of the trial court to make a new and different contract for the parties. Frost et al. v. Reagon, 32 Okla. 849 124 P. 13; Russell et al. v. Shell Petroleum Corporation (C. C. A.) 66 F. (2d) 864.

This is not a case where the plaintiff is seeking to have a deed canceled for fraud and the agreement between the parties rescinded. Had it been such and upon proper proofs, it would have been proper to decree a cancellation of the deed. Paragraph 3 of

9 C. J. 1159, on Cancellation of Instruments, reads as follows:

"The difference between reformation and rescission is clear and well defined; the reformation of a contract involves an effort to enforce it as reformed, whereas rescission involves an effort to abandon and to recede from a contract which the other party had not intended to make." Holcomb & Hoke Mfg. Co., etc., v. Jones, 102 Okla. 175, 228 P. 968.

For mutual mistake or for fraud on one side and mistake on the other in the execution and acceptance of a written contract or deed, we conceive that the proper relief, in order to make the writing conform to the true agreement is by way of reformation of the instrument. See 53 C. J. 949, Reformation of Instruments: Thraves v. Greenlees, 42 Okla. 764, 142 P. 1021. However, reformation will not be decreed unless the proofs in favor thereof are clear, unequivocal, and decisive. In passing upon the proof requirements for the reformation of a written instrument this court, in the case of American Life Insurance Co. v. Ratcliff, 168 Okla. 439, 33 P. (2d) 634, l. c. 635, had this to say:

"The rule stated by the authorities shows that in order to justify the reformation of a deed which fails to conform to the agreement of the parties because of mutual mistake, the proof should be clear, unequivocal and decisive. There must be more than a mere preponderance of the evidence, and the evidence must be sufficient to take the question out of the range of reasonable controversy."

See, also, Cummins v. Houghton, 167 Okla. 278, 29 P. (2d) 71; Davis v. Universal Insurance Co. 169 Okla. 593, 38 P. (2d) 932; and, of course the same rule applicable to mutual mistake is also applicable to the situation where there is fraud on one side and mistake on the other.

Since the deed involved in this cause, as we have found, was valid and in full force as to certain provisions, it follows that it should not have been canceled, but rather, in conformity to the relief which plaintiff has shown herself entitled, the trial court should have decreed a reformation of the deed so that it would have then provided for a conveyance of an undivided one-third interest in the oil gas, and other minerals for a period of 25 years, etc., without disturbing the provisions of the deed with reference to rentals and bonuses and the right of the defendant to lease for oil, gas, and other minerals. The judgment and decree of the trial court is set aside with directions to enter a decree in conformity with

the views herein expressed; costs of appeal to be equally divided between the parties.

The Supreme Court acknowledges the aid of Attorneys G. P. Cantrell, William P. McGinnis. and Allen R. Shaw in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Cantrell and approved by Mr. McGinnis and Mr. Shaw, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur.