**Bennie W. AGEE, Administrator of the Estate of M. Louise Agee, Deceased, Plaintiff,**

v.

**The TRAVELERS INDEMNITY COMPANY, Defendant.**

Civ. No. 65–305.

United States District Court
W. D. Oklahoma.

Feb. 13, 1967.

Carl E. Moslander, Oklahoma City, Okl., for plaintiff.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The plaintiff brings this action against the defendant in the nature of garnishment to require the defendant by reason of an insurance policy it had issued to B. W. Agee to pay a judgment the plaintiff, Bennie W. Agee as Administrator of the Estate of M. Louise Agee, Deceased, has obtained in the District Court of Oklahoma County, State of Oklahoma.

The Court finds from the evidence that on July 3, 1963, the defendant issued a family automobile policy of insurance to B. W. Agee (the same person as Bennie W. Agee, plaintiff herein) as the "named insured" with two named "owned automobiles", a 1963 Chevrolet and a 1956 Buick. The term of this policy was for one year. On this date B. W. Agee was married and his wife was M. Louise Agee the decedent herein. B. W. Agee and M. Louise Agee experienced domestic troubles and on June 21, 1964, B. W. Agee moved out of the home of the couple and took the minor children with him. He first went to his mother's home, then to a motel and then finally rented a house. Prior to June 21, 1964, and on the basis of a signed renewal statement dated May 5, 1964, in which B. W. Agee indicated no changes in the policy, a renewal Declaration sheet was mailed by the defendant to B. W. Agee on or about May 5, 1964, to be effective July 3, 1964, and to cover the ensuing year. No changes were listed therein as to the "named insured" or "owned automobiles". Some-

time after the aforementioned separation of B. W. Agee and his wife, B. W. Agee called and informed the soliciting insurance agent of the separation and the fact that he no longer resided at the address shown in the policy which was the address where Mr. Agee and his wife lived and from which he had moved on June 21, 1964, with the children. Mr. Agee also gave the agent his new address but gave no instructions to the agent to make any changes in connection with the terms or provisions of the insurance policy. B. W. Agee and M. Louise Agee were divorced on August 14, 1964, a decree of divorce being filed that date as the result of a divorce proceeding instituted on July 6, 1964. In this divorce decree M. Louise Agee was awarded the 1956 Buick mentioned above as her sole property. The insurance agent was not advised of the divorce of B. W. and M. Louise Agee. On August 15, 1964, M. Louise Agee bought a 1964 Oldsmobile from Jackie Cooper Oldsmobile Inc. (Jackie Cooper) of Yukon, Oklahoma, trading in the 1956 Buick. The insurance agent was not advised of this purchase. On August 17, 1964, she brought the Oldsmobile back for some repairs. As she had no other car to drive while the repairs were being made Jackie Cooper lent her a 1959 Chevrolet. On August 19, 1964, while a passenger in the 1959 Chevrolet which was driven at the time by one Chester Lee Sullivan the said M. Louise Agee was killed in an automobile accident on N. E. 23rd Street in Oklahoma City. On August 25, 1964, B. W. Agee was appointed Administrator of the Estate of M. Louise Agee, Deceased. On August 26, 1964, said Chester Lee Sullivan brought suit in State Court for his personal injuries resulting from the accident against Samuel W. Easley, Donald W. Vernon and Adria Fulcher, all of whom were connected with the other cars involved in the accident. In September, 1964, the plaintiff herein as Administrator of the Estate of M. Louise Agee, Deceased, brought suit in State Court against Sullivan and the said Vernon, Easley and Fulcher in connection with said accident for the alleged wrongful death of M. Louise Agee. On July 2, 1965, the plaintiff herein dismissed without prejudice the aforementioned case he had brought in the State District Court of Oklahoma County against the said Vernon, Easley and Fulcher and on the same day took a judgment in said Court against the remaining defendant, Chester Lee Sullivan, in the amount of $21,632.-00. In connection with this judgment and prior to its entry plaintiff herein signed a covenant which provided that if Chester Lee Sullivan would waive trial by jury in the case and not resist plaintiff's obtaining a judgment against him therein the plaintiff would agree to never attempt to collect the judgment from said Chester Lee Sullivan or his heirs but would only try to collect it from this defendant by virtue of the insurance policy involved herein. A jury was waived by Sullivan and he did not resist the judgment entered against him. This covenant was placed in evidence in this case.

The plaintiff contends herein that the aforementioned insurance policy covered the accident in which M. Louise Agee lost her life in that she was a named insured under the policy and Chester Lee Sullivan who was driving the car with her permission was an additional insured by virtue of such permissive use.

The defendant denies that M. Louise Agee was a named insured or that she or the said Chester Lee Sullivan was an insured person under said policy at the time of the accident and denies, therefore that the policy provided coverage for the said accident and further denies that it is liable for the payment of any part of the judgment plaintiff herein has obtained against the said Chester Lee Sullivan in the State District Court of Oklahoma County, Oklahoma. For further defense the defendant alleges that the said written covenant signed by the plaintiff herein which resulted in the State Court judgment being rendered in favor of the plaintiff and against the said Chester Lee Sullivan constitutes a legal fraud upon this defendant which bars plaintiff's recovery herein on said State Court

judgment and further that by the said Chester Lee Sullivan agreeing to said covenant he has released this defendant of and from any and all liability to either the said Chester Lee Sullivan or through him to the plaintiff in attempting to enforce said judgment.

At the start of the trial and at the close of the plaintiff's evidence and in oral argument the plaintiff verbally asked for equitable relief in the nature of reformation to the effect that said insurance policy be reformed to correct what the plaintiff alleges was a mutual mistake amounting to a failure to cause the policy to be issued in accordance with an understanding between B. W. Agee and the agent for the insurance company. The plaintiff also contends that inasmuch as the defendant has made a medical clause payment under the policy it is estopped from denying the coverage of the said policy with reference to the accident involved herein and the alleged wrongful death of M. Louise Agee.

The Court is thus confronted with two broad issues in this litigation, the first pertaining to the matter of whether or not the insurance policy issued by the defendant covers the accident in which M. Louise Agee lost her life and the second if coverage is present whether the State Court judgment may be enforced in garnishment against the policy in view of the manner in which it was obtained and the written covenant signed by the plaintiff.

First with reference to the plaintiff's belated plea for reformation of the policy. The equitable remedy of reformation of a written instrument is the remedy afforded by courts of equity to the parties and privies of parties to such instrument to reform or rectify such instrument whenever it fails, through accident, mistake or fraud or a combination of fraud and mistake to express the real agreement or intention of the parties. The suit for such relief rests on the theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake or mistake and fraud, some provision was omitted or

mistakenly inserted, and the suit is so to change the instrument as to conform it to the contract agreed on. There can be no reformation unless there is an antecedent agreement by which to make the rectification. Dennis v. American First Title & Trust Company, et al. (Okl.–1965) 405 P.2d 993. 45 Am.Jur., Reformation of Instruments, Section 2, page 584. Courts of Equity in the exercise of their jurisdiction to reform written instruments proceed with utmost caution. 45 Am. Jur., Reformation of Instruments, Section 5, page 585. To justify reformation of a written instrument the proof should be clear, unequivocal and decisive. There must be more than a mere preponderance of the evidence and the evidence must be sufficient to take the question out of the range of reasonable controversy. Douglas v. Douglas (1936) 176 Okl. 378, 56 P. 2d 362. The Court cannot make a new or different contract for the parties. Douglas v. Douglas, supra.

The evidence is in conflict as to what transpired between B. W. Agee, the named insured in the policy, and the insurance agent after the separation of B. W. Agee and wife. There is also a question as to whether there was an antecedent agreement between them which by mistake was not incorporated in the policy. No claim of fraud on the part of the company is asserted by the plaintiff.

It was the testimony of B. W. Agee that shortly after his separation from his wife he advised the agent of the fact of separation, his new residence address and that he wanted the insurance kept in effect and he would pay the premium for the second policy year. Then at a second conversation with the agent B. W. Agee testified that he advised the agent that he and his wife were getting a divorce and that he wanted the insurance continued on her Buick which was one of the two named "owned automobiles". It was the testimony of the insurance agent that the Declarations sheet for the second policy year was prepared pursuant to a renewal slip signed by B. W. Agee in which he indicated no changes were desired in the policy as issued for the first policy

year. The insurance agent testified that he had a conversation with B. W. Agee in late June, 1964, and that Mr. Agee informed him of the separation and that he no longer resided at his previous address; that Mr. Agee gave the insurance agent another mailing address and did not request any changes with respect to the insurance policy or coverage afforded by the same. The insurance agent testified that he had no other conversations and received no further information from B. W. Agee or anyone else regarding the insurance policy until after the accident and the death of M. Louise Agee.

As heretofore stated in the findings of the Court, the testimony of the insurance agent on this point has been adopted as the factual finding of this case. The plaintiff has failed to sustain his burden of proof. This is to say and find that B. W. Agee requested no changes in the insurance policy and that there was thus no antecedent agreement between B. W. Agee and the insurance agent or any other basis on which to reform or otherwise extend the coverage beyond the terms of the policy as placed in evidence.

But even if the testimony of B. W. Agee on this point should have been adopted as true by the Court, the policy still cannot be reformed. B. W. Agee did not specifically request of the insurance agent that M. Louise Agee be shown as a second "named insured" in Item 1 of the Declarations sheet. The most B. W. Agee said to the insurance agent according to his testimony was that he desired that the 1956 Buick continue to be covered notwithstanding the separation or even the divorce. This would require no change in the policy for the 1956 Buick was listed as an "owned automobile" and as such was covered by the policy when driven by M. Louise Agee with the permission of B. W. Agee. Under the circumstances of this case it appears without dispute that upon separation M. Louise Agee thereafter kept and used the Buick with the permission of B. W. Agee and with the decree of divorce granting her sole ownership of the 1956 Buick it

continued to be an "owned automobile" listed in the policy and continued to be used by her with permission, express or implied, of B. W. Agee. Thus, there was nothing to change about the policy. The only request B. W. Agee claims he made to the insurance agent required no action by the agent to change the policy. Furthermore, the testimony is undisputed that the insurance agent was not notified by anyone of either the divorce of the Agees or the fact that M. Louise Agee had traded in the 1956 Buick for a 1964 Oldsmobile. When the 1956 Buick was traded in by M. Louise Agee it then ceased to be an "owned automobile" and have any coverage under the policy. To have given coverage under the policy to the 1964 Oldsmobile in these circumstances it would have been necessary for the agent to have been advised of the trade in and the acquisition of the Oldsmobile in lieu of the Buick and this was never done. Moreover, this being a family automobile policy it is not intended to insure two families but rather one family and upon the divorce of B. W. Agee and M. Louise Agee it is doubted that any new car would have been afforded coverage thereunder unless it belonged to or was acquired by B. W. Agee which was not the case as to the Oldsmobile in view of the divorce and its purchase by M. Louise Agee. Thus, the Court finds and concludes that the plaintiff is not entitled to reformation of the insurance policy as requested.

Next, with reference to the claim of the plaintiff that the defendant is estopped to deny coverage for the plaintiff's judgment against Chester Lee Sullivan by virtue of the defendant making a medical payment under the policy to the plaintiff for and on behalf of his decedent, M. Louise Agee.

The Supreme Court of Oklahoma has set forth in the case of Antrim Lumber Co. v. Wagner, 175 Okl. 564, 54 P.2d 173 (1936), the elements necessary to sustain an estoppel as follows:

"First. There must be a false representation or concealment of facts.

"Second. It must have been made with knowledge, actual or constructive, of the real facts.

"Third. The party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts.

"Fourth. It must have been made with the intention that it should be acted upon.

"Fifth. The party to whom it was made must have relied on or acted upon it to his prejudice."

The evidence reveals that B. W. Agee through his attorney by letter requested the medical coverage payment of $500.00 from the defendant. This request was honored and the payment was made to B. W. Agee on May 7, 1965. The evidence also reveals that prior to such request and payment and on December 3, 1964, the defendant advised the attorney for Chester Lee Sullivan who at that time had been sued by the plaintiff herein that he, Chester Lee Sullivan, was not an insured under the policy and that the defendant herein would not defend the case or pay any judgment rendered therein. It was the testimony of the agent of the defendant who made the medical payment that the same was made in error and by mistake and without his having reviewed the file before making such medical payment; that had he reviewed the file he would have ascertained that coverage had been declined by his company.

▮ The Court finds from the evidence that the defendant had previously investigated and declined coverage under the policy for the August 19, 1964, accident and that the medical payment was thereafter made in error and by mistake. In these circumstances the Supreme Court of Oklahoma in the case of St. Louis & S. F. R. Co., et al. v. Mann, 79 Okl. 160, 192 P. 231 (1920), has denied the applicability of estoppel by the following language contained in said opinion:

"It is well settled that an estoppel cannot be set up against a party ignorant of the true state of affairs, or whose conduct was based upon pure mistake. To establish estoppel by conduct, it is necessary that the conduct relied upon should have been intended to influence the other party to act, and if there was no such intent the estoppel is not made out."

The Court also finds from the evidence that the plaintiff has failed to establish the fifth element of estoppel which is that he has relied upon or acted upon the medical payment to his prejudice. Failing to show such prejudice by virtue of receiving the medical payment, the plaintiff is not entitled to successfully assert estoppel. See Continental Oil Company v. Rapp, et al. (Okl.–1956) 301 P.2d 198, and Fipps v. Stidham (1935) 174 Okl. 473, 50 P.2d 680.

With the foregoing findings made in the light of the law of estoppel the Court concludes that the defendant is not estopped to deny coverage herein.

▮ With reference to policy coverage the Court finds and concludes that Chester Lee Sullivan as the driver of the 1959 Chevrolet which was involved in the accident resulting in the death of M. Louise Agee was not a "named insured" under the policy. Nor was M. Louise Agee, his passenger, a "named insured" under the policy. The only person listed in Item 1 of the Declarations in the policy (block for setting out the "named insured") was B. W. Agee. The term "named insured" as defined in the policy means any individual named in Item 1 of the Declarations (only B. W. Agee) and also includes his spouse, if a resident of the same household. As stated above M. Louise Agee was not named in Item 1 of the Declarations and having been divorced from B. W. Agee on August 14, 1964, was not his spouse on August 19, 1964, when the accident occurred. In addition, she was not a resident of the same household as B. W. Agee at the time of the accident. The fact that *M. Louise* was listed in another block in the lower right hand corner of the Declarations does not in itself make her a "named insured" because said block by the double asterisks in the same refers up not to Item 1 but to Item 2 which is the policy

period block. As the spouse of B. W. Agee at the time, *M. Louise* was listed in this block as a known operator and for the purpose of establishing her date of birth and driver's license number as well as recording the same information for B. W. Agee. This block is also used to identify the insurance agency selling the policy and traffic accidents and violations. It is, therefore, concluded that the only "named insured" of the policy on the date of the accident on August 19, 1964, was B. W. Agee. M. Louise Agee was not a "named insured" nor was Chester Lee Sullivan on August 19, 1964, the date of the accident involved herein.

At the time of the accident M. Louise Agee was a passenger in a 1959 Chevrolet involved therein which as stated above had been lent to M. Louise Agee by Jackie Cooper as a temporary substitute automobile for the Oldsmobile which M. Louise Agee had bought from said Jackie Cooper after she was divorced from B. W. Agee. Under the policy an "owned automobile" receiving coverage means a private passenger automobile described in the policy. However, an "owned automobile" also means a private passenger automobile ownership of which is *acquired by the named insured* during the policy period provided it replaces an "owned automobile" described in the policy. In this connection, the Oldsmobile bought by M. Louise Agee from Jackie Cooper after the divorce was a private passenger automobile and it replaced the traded in 1956 Buick which was an "owned automobile" in the policy and said Oldsmobile was acquired during the policy period. But the Oldsmobile was not acquired by a "named insured" because the only "named insured" at the time the Oldsmobile was purchased was B. W. Agee. The Oldsmobile was acquired by M. Louise Agee who was not a "named insured" when she bought the same. She ceased being a "named insured" by virtue of being the spouse of the "named insured" when she was divorced from B. W. Agee which occurred prior to her purchase of the Oldsmobile. An "owned automobile" also means a

"temporary substitute automobile" for an owned automobile but here the 1959 Chevrolet was not a temporary substitute automobile for the 1956 Buick, the "owned automobile" named in the policy, but was a temporary substitute automobile for the Oldsmobile which was not an "owned automobile" under the policy as aforesaid. 7 Am.Jur.2d, Automobile Insurance, Section 103, pages 411 and 412. It is, therefore, concluded that the 1959 Chevrolet was not an "owned automobile" under the policy by reason of the temporary substitute automobile provision thereof when it was involved in the accident of August 19, 1964.

With reference to whether the said Chester Lee Sullivan or M. Louise Agee at the time of the accident involved herein was a person insured under the policy of insurance involved herein such "persons insured" are placed in two categories by the policy. The first category is with respect to an "owned automobile". As heretofore stated the 1959 Chevrolet involved in the accident was not an "owned automobile" under the provisions of the policy and, therefore, the said Chester Lee Sullivan and M. Louise Agee could not be a person or persons insured with respect to an "owned automobile". The second category is with respect to a "non-owned automobile". This provision of the policy must, therefore, be considered inasmuch as the 1959 Chevrolet was a "non-owned automobile" as far as the policy of insurance involved herein is concerned. Persons insured with respect to a "non-owned automobile" include the "named insured" which as aforesaid was only B. W. Agee at the time of the accident. Another person insured with respect to a "non-owned automobile" would be any relative of the named insured who is a resident of the same household. A relative is defined in the policy as meaning a relative of the named insured who is a resident of the same household. In this connection, the Court finds and concludes that on the date of the accident neither Chester Lee Sullivan nor M. Louise Agee was a relative of B. W. Agee the only "named insured". Another per-

**330**

son insured with respect to a "non-owned automobile" would be any other person not owning or hiring the non-owned automobile but only with respect to his liability because of acts or omissions of the "named insured" or any relative of the "named insured". Chester Lee Sullivan did not own or hire the 1959 Chevrolet. But under the evidence the Court finds that he was not driving the 1959 Chevrolet at the time of the accident because of any acts or omissions of B. W. Agee, the only named insured, or any relative of B. W. Agee. B. W. Agee had nothing whatsoever to do with the 1959 Chevrolet or Chester Lee Sullivan driving the same at the time of the accident. It is, therefore, concluded that neither Chester Lee Sullivan nor M. Louise Agee was a person insured under the policy of insurance on August 19, 1964, when the accident occurred.

The Court, therefore, finds and concludes that neither Chester Lee Sullivan nor M. Louise Agee was a "named insured" in the policy at the time of the accident, the 1959 Chevrolet involved in the accident was not an "owned automobile" under the policy but was a "non-owned automobile" and neither Chester Lee Sullivan nor M. Louise Agee was a person insured under the policy with respect to a "non-owned automobile".

In finding that reformation of the policy is not in order, that the defendant is not estopped from denying coverage herein because of making the medical payment and that the policy sued on herein did not afford coverage for said accident of August 19, 1964, it becomes unnecessary to consider the defense of legal fraud as raised by the defendant herein.

Judgment should be entered denying the plaintiff the relief sought herein based on the foregoing findings of fact and conclusions of law. Counsel for the defendant will prepare an appropriate judgment which will be presented to counsel for the plaintiff and then to the Court for signature and entry. Rule 58, F.R.Civ.P., 28 U.S.C.A.